**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONOVAN REALTY, LLC, DD&A TILDEN REALTY, LLC, ZERTECK, INC., TILDEN RECREATIONAL VEHICLES, INC., and DERWOOD LITTLEFIELD, <br><br> Plaintiffs-Counterclaim Defendants, <br><br> v. <br><br> CAMPERS INN HOLDING CORPORATION, CI OF HAMBURG, LLC, and CI OF WEST COXSACKIE, LLC, <br> , <br><br> Defendants-Counterclaim Plaintiffs. | CIVIL ACTION NO. 20-CV-03954-PBT |

## <u>NONPARTIES MARCUS LEMONIS, BRENT MOODY, AND JOSH ERICKSON'S MOTION TO QUASH DEFENDANTS' SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER</u>

Nonparties Marcus Lemonis, Brent Moody, and Josh Erickson move under Rule 45 of the

Federal Rules of Civil Procedure to quash the subpoenas issued to them in *Donovan Realty, LLC,*

*et al. v. Campers Inn Holding Corp., et al.*, E.D. Pa., Case No. 2:20-cv-03954-PBT. The

subpoenas are attached as Exhibits A-C. In the alternative, Movants request that the Court enter

a protective order under Rule 26(c). The grounds for Movants' alternative motions are set forth

in the accompanying Memorandum of Law and Movants incorporate the Memorandum by

reference.

DUANE MORRIS LLP

*/s/ James H. Steigerwald*
James H. Steigerwald (82469)
Simeon S. Poles (324895)
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

*Attorneys for Movants*

Dated: September 15, 2021

2

**CERTIFICATE OF SERVICE**

I, James H. Steigerwald, hereby certify that on September 15, 2021, I caused a true and correct copy of the foregoing Nonparties Marcus Lemonis, Brent Moody, and Josh Erickson's Motion to Quash Defendants' Subpoenas or, in the Alternative, for a Protective Order to be served on counsel for all parties via this Court's electronic filing system.

/s/ James H. Steigerwald
James H. Steigerwald

DM1\12356136.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONOVAN REALTY, LLC, DD&A TILDEN REALTY, LLC, ZERTECK, INC., TILDEN RECREATIONAL VEHICLES, INC., and DERWOOD LITTLEFIELD, | : : : : : : | |
| Plaintiffs-Counterclaim Defendants, | : : : | |
| v. | : : : | CIVIL ACTION NO. 20-CV-03954-PBT |
| CAMPERS INN HOLDING CORPORATION, CI OF HAMBURG, LLC, and CI OF WEST COXSACKIE, LLC, | : : : : : | |
| Defendants-Counterclaim Plaintiffs. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY NONPARTIES TO QUASH DEFENDANTS' SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTS AND BACKGROUND .........................................................................3

     A.    Defendants' Failed Transaction with Sellers ........................................ 3

     B.    Sellers Convey the Properties to Camping World ................................. 3

     C.    The Litigation Between Sellers and Campers Inn ................................. 5

     D.    Campers Inn Tries Repeatedly to Drag Camping World into Litigation. ............... 5

     E.    The Subpoenas Issued to Movants ........................................................ 6

III.    GOVERNING STANDARDS .........................................................................7

IV.    ARGUMENT ..................................................................................................8

     A.    This Court Should Quash the Subpoena to Mr. Lemonis Under the "Apex Doctrine." ............................................................................ 8

     B.    This Court Should Quash All Three Subpoenas as Unduly Burdensome to the Deponents ......................................................... 12

     C.    The Subpoenas Should be Quashed Because they Improperly Seek Privileged Documents ...................................................... 17

     D.    Alternatively, the Court Should Grant a Protective Order That Limits the Scope of Discovery. ................................................ 18

V.    RELIEF ........................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Frank v. Honeywell Int'l Inc.*, 2015 WL 4770965 (E.D. Pa. Aug. 13, 2015)............................8, 12

*Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, 2014 WL 272088
    (E.D. Pa. Jan. 24, 2014) (Sanchez, J.)..........................................................7

*George v. Penn. Tpk. Comm'n*, 2020 WL 2745724 (M.D. Pa. May 27, 2020) ..................... 10-11

*Kelley v. Enhanced Recovery Co., LLC*, 2016 WL 8673055 (D.N.J. Oct. 7, 2016)........ 7-8, 12, 17

*Lady Liberty Transp. Co. v. Philadelphia Parking Auth.*, 2007 WL 707372 (E.D.
    Pa. Mar. 1, 2007)...........................................................................13, 15

*In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480 (E.D. Pa.
    Jan. 31, 2012)..................................................................................19

*Nedler v. Vaisberg*, 2006 WL 2460892 (E.D. Pa. Aug. 22, 2006) ...............................17

*Nothstein v. USA Cycling*, 337 F.R.D. 375 (E.D. Pa. 2020)............................... 18-19

*Nupson v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 1293557 (E.D. Pa.
    Apr. 7, 2021) .................................................................................17

*Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) ...................................................... 18-19

*Reif v. CNA*, 248 F.R.D. 448 (E.D. Pa. 2008) (Sanchez, J.) ......................................9, 12

*Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271 (W.D. Pa. 2014)........................17, 19

*United States ex rel. Galmines v. Novartis Pharms. Corp.*, 2015 WL 4973626
    (E.D. Pa. Aug. 20, 2015).......................................................9, 12, 17

**State Cases**

*Bousamra v. Excela Health*, 210 A.3d 967 (Pa. 2019) ...........................................17, 19

**Rules**

Fed. R. Civ. P. 26...............................................................................18

Fed. R. Civ. P. 26(b)(1)........................................................................7, 19

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................7

Fed. R. Civ. P. 26(b)(3)..........................................................................17

Fed. R. Civ. P. 26(c) ...........................................................................................................19

Fed. R. Civ. P. 45...........................................................................................................7, 12

Marcus Lemonis, Brent Moody, and Josh Erickson ("Movants") respectfully submit this Memorandum of Law in support of their Motion to Quash the Nonparty Subpoena *Duces Tecum* issued to them by Defendants, Campers Inn Holding Corporation, CI of Hamburg, LLC, and CI of West Coxsackie, LLC (collectively, "Campers Inn" or "Defendants") or, in the alternative, for a protective order to be entered in this matter.

## I.    INTRODUCTION

The Court should quash the subpoenas issued to Movants, three high-level executives of non-party Camping World Holdings Inc. ("Camping World"), because they demand the production of documents unrelated to any matter at issue in this litigation as well as the testimony of witnesses—including of Camping World's Chairman and CEO—that is either entirely unnecessary or inappropriate at this time.

This case arises from a failed transaction between Defendants and the Seller/Plaintiffs for the sale of certain RV dealerships and real estate in Hamburg, PA and West Coxsackie, NY. Although the parties dispute the reason that transaction did not close, both parties agree that Campers Inn was not able to fund the transaction on the deadline set for closing in the parties' agreements. Grasping at straws, Campers Inn claims in this litigation that the deadline was extended for various reasons or should not be enforced. Accordingly, the key matters at issue in this litigation are the interpretation of the agreement between Plaintiffs and Defendants, and whether Campers Inn fulfilled its obligations under that agreement.

After the deal between Plaintiffs and Defendants fell through, Plaintiffs sold the properties and assets to affiliates of Camping World. Campers Inn now seeks the depositions of Movants, who include Camping World's Chairman and CEO, as well as documents about all aspects of the transaction between Camping World and Plaintiffs, as well as all communications between Plaintiffs and Camping World about this litigation. But that discovery has no relation to

whether the Defendants were prepared to timely close their deal with Plaintiff or whether they fulfilled the requirements to extend the closing deadline. Instead, the document requests are a transparent attempt to expand this matter into a litigation about litigation and impose unnecessary cost and expense on both Movants and Camping World.

Campers Inn issued these subpoenas following numerous events that illustrate why the subpoenas and the document requests they include are inappropriate and intended merely to harass and burden a third party. First, nearly seven months ago, this Court denied Campers Inn's motion to unnecessarily expand the scope of this action by joining Camping World as a third-party defendant. After that motion failed, Campers Inn filed two additional lawsuits against Camping World, one of which remains pending before Judge Leon Tucker in the Philadelphia Court of Common Pleas. Finally, the overly broad requests for the production of documents, which do not relate to the matters at issue in this litigation come on the heels of Camping World already producing numerous documents on an expedited basis in response to a document subpoena issued last fall in connection with Campers Inn's now-moot motion for a preliminary injunction. Through the subpoenas, Defendants seek to further harass Camping World and accomplish an "end run" in this Court around discovery in the Court of Common Pleas. Defendants should not be permitted to use this Court to further their claims against Camping World in a different venue.

In light of these circumstances, the Court should quash Defendants' attempt to depose Camping World's executives both as unduly burdensome and harassing and under the apex doctrine, which prevents the deposition of high-level executives where the information sought may be discovered from lower-level employees and through less burdensome means.

Alternatively, the Court should issue a protective order that limits the scope of the subpoenas to matters truly necessary and appropriate for the adjudication of this action.

## II.  FACTS AND BACKGROUND

### A.  Defendants' Failed Transaction with Sellers

On February 4, 2020, Sellers entered into a pair of agreements with Campers Inn: (1) an Asset Purchase Agreement ("APA") and (2) an Agreement for the Purchase and Sale of Real Estate and Related Property ("RPA").  (Pls.' Mot. for J. on the Pleadings ("MJOP") ¶ 1, ECF 15, attached as Exhibit D.)  The RPA provided that the sale of the real estate assets was to close "on or before April 15, 2020, *time being of the essence*."  (*Id*. ¶ 2) (emphasis in original.)  Despite all conditions precedent to Campers Inn's performance being satisfied, the RPA did not close by the April 15 deadline, (*Id*. ¶ 7), and Sellers exercised their rights to terminate the RPA two days later (*Id*. ¶ 8.)

A week after Sellers terminated the RPA, the parties entered the First Addendum to the Transaction Documents, through which they agreed to extend the real estate closing deadline until July 31, 2020.  (*Id*. ¶ 9.)  When the deadline arrived, Campers Inn was not prepared to close because it could not tender the purchase price for the properties.  (*Id*. ¶¶ 17-18.)  Because Campers Inn undisputedly failed to close by the deadline, Sellers took the position that the APA and the RPA had terminated and had no further effect.  (*Id*. ¶ 21.)

### B.  Sellers Convey the Properties to Camping World

On August 1, 2020, Sellers received an inquiry about the status of its deal with Campers Inn from Aaron Young of Dutchman Manufacturing, a supplier of recreational vehicles, and Sellers informed Mr. Young that the deal with Campers Inn had failed to close.  (Opp'n to Campers Inn's Mot. to Amend Countercl. ("Opposition"), at 12, ECF 29, attached as Exhibit E.) Camping World later contacted Sellers to communicate its interest in purchasing the two

properties that were the subjects of the deal with Campers Inn. (*Id.*) On August 3, 2020, Sellers and Camping World formally entered negotiations and exchanged initial documents for that purpose. (*Id.*, at 13.) Those negotiations concluded on August 19, 2020, when Sellers and Camping World entered into an asset purchase agreement, and the parties later closed the transaction on October 9, 2020. (*Id.*)

Camping World is a recreational vehicle ("RV") business with more than 235 locations nationwide. (*See* Camping World Career Portal, https://www.campingworldcareers.com/ (last visited September 14, 2021).) The business employs nearly 7,000 people in more than 100 cities coast-to-coast. (*See* U.S. Chamber of Commerce, *Marcus Lemonis*, https://www.uschamber.com/marcus-lemonis (last visited September 14, 2021).) As Chairman and CEO, Mr. Lemonis is tasked with keeping the multibillion dollar company on track and growing it responsibly. Since 2018, Mr. Moody has served as the company's President, having previously served as Chief Operating and Legal Officer and in a variety of other roles. (*See* Business Wire, *Camping World Holdings Announces Promotion of Brent Moody to President*, https://www.businesswire.com/news/home/20181001005270/en/Camping-World-Holdings-Announces-Promotion-of-Brent-Moody-to-President (last visited September 14, 2021).) And Mr. Erickson is a Divisional RV President who, among other things, shares the responsibility to manage the company's dealership group with Mr. Lemonis and three other Divisional Presidents. (*See* Camping World, *Camping World Holdings, Inc. Announces Executive Management Realignment*, https://investor.campingworld.com/press-releases/press-release-details/2019/Camping-World-Holdings-Inc-Announces-Executive-Management-Realignment/default.aspx (last visited, September 14, 2021).)

## C. The Litigation Between Sellers and Campers Inn

Sellers filed the current action against Campers Inn (*Donovan Realty, LLC et al. v. Campers Inn Holding Corp. et al.*, E.D. Pa. No. 20-cv-03954), seeking the return of their deposit and other damages from Campers Inn's failure to close the transaction. (Opposition, at 13.) Campers Inn responded twelve days later with an answer and counterclaims together with a motion for expedited discovery and a motion for preliminary injunction, seeking to force Sellers to immediately convey the properties to Campers Inn. (*Id.*) Sellers later filed a Motion for Judgment on the Pleadings asserting that the facts of both parties' pleadings establish that Sellers are entitled to judgment as a matter of law. (*See generally* MJOP.) Sellers' motion is pending before the Court.

## D. Campers Inn Tries Repeatedly to Drag Camping World into Litigation.

On October 28, 2020, Campers Inn sought to amend its Counterclaims in what would be its first attempt to sue Camping World over the failed transaction. (*See generally* Defs.' Mot. to Amend Countercl., ECF 26, attached as Exhibit F.) This Court denied Campers Inn's request by an Order dated April 6, 2021. (*See* Order Den. Mot. to Amend Countercl., ECF 34, attached as Exhibit G.) Undeterred, Campers Inn filed a separate action in this Court against Camping World on May 4, 2021, alleging tortious interference and seeking a declaratory judgment that (1) Camping World took title to the properties with knowledge *lis pendens* indexed against them, and (2) that Camping World is bound by the result of the action against Sellers to the same extent as a party. (*See* Pls.' Compl. ¶¶ 69-81, *Campers Inn Holding Corporation, et al. v. FRHP Lincolnshire, LLC, et al.*, Civil Action No. 2:21-cv-02056-PBT, ECF 1, attached as Exhibit H.) Camping World moved to dismiss those claims for lack of subject matter jurisdiction because complete diversity did not exist between Camping World and Campers Inn. (*See generally* Defs.' Mot. to Dismiss Pls.' Compl., Civil Action No. 2:21-cv-02056-PBT, ECF 8, attached as

Exhibit I.)  Two weeks later, Campers Inn voluntarily dismissed the action.  (*See generally* Notice of Voluntary Dismissal, Civil Action No. 2:21-cv-02056-PBT, ECF 11, attached as Exhibit J.)

Campers Inn then filed suit against Camping World in the Court of Common Pleas of Philadelphia County and asserted claims nearly identical to those it tried to bring in the May 4, 2021, action before this Court.  (*See* Pls.' Compl., *Campers Inn Holding Corporation, et al. v. FRHP Lincolnshire, LLC, et al.*, Philadelphia CCP Case No. 210601138, attached as Exhibit K.) Camping World filed Preliminary Objections seeking dismissal of Campers Inn's complaint on two grounds:  (1) the claim for a declaratory judgment that Camping World is bound by the action against Sellers is not ripe because this Court has not issued a final ruling, and (2) Campers Inn failed to state a claim for tortious interference.  (*See* Prelim. Objs. to Pls.' Compl., *Campers Inn Holding Corporation, et al. v. FRHP Lincolnshire, LLC, et al.*, Philadelphia CCP Case No. 210601138, attached as Exhibit L.)  Judge Tucker issued an order on September 8, 2021, sustaining Camping World's preliminary objections to the declaratory judgment claim and overruling them as to the tortious interference claim.  (*See* September 8, 2021 Order Regarding Prelim. Objs., *Campers Inn Holding Corporation, et al. v. FRHP Lincolnshire, LLC, et al.*, Philadelphia CCP Case No. 210601138, attached as Exhibit M.)

### E.  The Subpoenas Issued to Movants

Campers Inn has now served subpoenas in this action upon three Camping World executives—Marcus Lemonis (Chairman and CEO), Brent Moody (President) and Josh Erickson (Divisional RV President)—to be deposed for one day each over a three-day period from September 21-23, 2021.  (*See* Subpoenas, attached as Exhibits A-C.)  The subpoenas also command the deponents to produce documents responsive to three broad categories:

- Req. No. 1: "All documents or communications between You and [Sellers] reflecting, referring or relating in any way to Camping World's acquisition of the Properties";
- Req. No. 2: "All documents or communications between You and [Sellers] reflecting, referring or relating in any way to the ongoing litigation between Campers Inn and [Sellers] in United States District Court for the Eastern District of Pennsylvania, *Donovan Realty, LLC et al. v. Campers Inn Holding Corp. et al.*, E.D. Pa. No. 20-cv-03954"; and
- Req. No. 3: "All documents or communications between You and [Sellers] reflecting, referring or relating in any way to the ongoing dispute between Campers Inn and [Sellers], including, but not limited to, the potential risk or liability related to Camping World's acquisition of the Properties or the [Sellers'] obligation to indemnify Camping World for any lost [sic] associated with Camping World's acquisition of the Properties."

(*Id.*, at 6.)

## III.   GOVERNING STANDARDS

Subpoenas issued under Federal Rule of Civil Procedure 45 must "fall within the proper scope of discovery" permitted under Rule 26(b)(1).  *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, 2014 WL 272088, at *4 (E.D. Pa. Jan. 24, 2014) (Sanchez, J.) (internal citations and quotation marks omitted).  Rule 26(b)(1) provides that parties may obtain discovery related to non-privileged matters that are both relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  But the "scope of discovery while broad, is not limitless."  *Kelley v. Enhanced Recovery Co., LLC*, 2016 WL 8673055, at *2 (D.N.J. Oct. 7, 2016).  To maintain appropriate limits, Rule 26(b)(2)(C) "requires courts to limit discovery where 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive' and where 'the burden or expense of the proposed discovery outweighs its likely benefit . . . .'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)).

Relatedly, Rule 45 requires that courts "quash or modify a subpoena that . . . subjects a person to undue burden."  *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).  Courts look to several factors in assessing whether to quash a subpoena because it presents an undue burden: "(1) relevance of the requested materials, (2) the party's need for the documents, (3) the breadth of

the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the recipient's status as a non-party." *Frank v. Honeywell Int'l Inc.*, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015). Nonparties to an action receive "greater protection from discovery than a normal party." *Kelley*, 2016 WL 8673055, at *2. Accordingly, discovery sought from a non-party "is unduly burdensome where the information sought has already been, or can be obtained from other means." *Kelley*, 2016 WL 8673055, at *2 (internal citations and quotation marks omitted).

## IV. ARGUMENT

As explained more fully below, this Court should quash the subpoenas directed to Movants for two reasons. ***First***, the subpoena directed to Mr. Lemonis is impermissible under the "apex doctrine" that protects high-ranking corporate officials from being unduly burdened and harassed through the discovery process. ***Second***, all the subpoenas directed to Movants are unduly burdensome because they seek information not relevant or proportional to the needs of the case, are overbroad in scope, seek privileged communications, and represent an end-run around the pending litigation in the Court of Common Pleas. Alternatively, the Court should issue a protective order limiting the scope of the subpoenas to documents concerning Campers Inn or the failed transaction between Plaintiffs and Campers Inn.

### A. This Court Should Quash the Subpoena to Mr. Lemonis Under the "Apex Doctrine."

In a move calculated to harass, Campers Inn directed one of the subpoenas to Camping World's Chairman and CEO, who has no personal knowledge of the reasons that Plaintiffs' transaction with Campers Inn failed. Indeed, Campers Inn issued this subpoena *prior to*

obtaining testimony from party witnesses, or from other employees of Camping World.[1]  Such a

subpoena should be quashed under the apex doctrine.

A federal court's power to manage the discovery process includes "the discretion to

prevent oppressive, harassing, inconvenient, and burdensome depositions of executive officials."

*Reif v. CNA*, 248 F.R.D. 448, 453 (E.D. Pa. 2008) (Sanchez, J.) (citing Fed. R. Civ. P.

26(b)(2)(C)).  The exercise of that discretion has come to be known as the "apex doctrine," and it

provides courts with a framework to prohibit the depositions of certain high-level executives

when the executive lacks the requisite knowledge of the facts.  *See id*. at 451-53 (surveying

cases).

Courts in the Third Circuit apply a two-part test to determine whether the deposition of a

high-level executive is warranted: (1) "whether the high-level official has personal or superior

unique knowledge of the facts alleged" and (2) "whether the information could be obtained from

lower-level employees or through less burdensome means."  *United States ex rel. Galmines v.

Novartis Pharms. Corp.*, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015).  Recognizing the

potential for parties to use depositions to harass high-level executives, the apex doctrine

"appl[ies] a rebuttable presumption that a high-level official's deposition represents a significant

burden upon the deponent and that this burden is undue absent the two factors set forth in the

apex doctrine[.]"  *Id*. at *2

Defendants' subpoena to Mr. Lemonis fails to satisfy either prong of the apex doctrine as

applied in the Third Circuit.  To begin with, Mr. Lemonis has no unique and superior personal

knowledge of the matters at issue in this litigation.  Courts evaluating similar cases under the

---

[1] Camping World understands that depositions of party witnesses have not yet occurred and that no scheduling order has been entered in this litigation.

apex doctrine have barred depositions of high-level executives like Mr. Lemonis who lack the requisite level of knowledge, even when they participated in the events at issue.  *See George v. Penn. Tpk. Comm'n*, 2020 WL 2745724, at *3 (M.D. Pa. May 27, 2020) (denying motion to compel deposition of apex witness despite fact that the apex witness participated in events at issue, because "it cannot be said that he possessed superior, or unique knowledge of these events").

In *George*, the plaintiff in a discrimination case against the Pennsylvania Turnpike Commission moved to compel the deposition of the Commission's CEO because the CEO consulted with the supervisor that terminated him and later participated in the decision to fire the plaintiff.  *George*, 2020 WL 2745724, at *3.  The court denied the motion[2], finding that (1) the CEO's involvement did not suggest he had superior or unique knowledge of the termination events; and (2) the direct supervisor who fired the plaintiff and the Turnpike Commission's HR staff both had superior knowledge to the CEO about the details of the termination.  *Id.*

Mr. Lemonis personal knowledge of relevant events and participation in the matters at issue is even more remote than the CEO whose subpoena the court quashed in *George*.  Mr. Lemonis was not involved in the failed transaction between Plaintiffs and Campers Inn and has no knowledge of why Campers Inn failed to close that transaction.  Moreover, given the breadth of Mr. Lemonis's responsibilities as Chairman and CEO of Camping World, to the extent he had any involvement in Camping World's subsequent deal with Sellers, that involvement was limited and unrelated to any details that could be relevant to Campers Inn's claims in this case.  As such, he lacks the requisite level of knowledge to justify an apex deposition.

---

[2] The court in *George* denied the request to conduct the apex deposition as untimely, but it still determined that, besides being untimely, the deposition request "fail[ed] on its merits" under the apex doctrine.  *George*, 2020 WL 2745724, at *3.

Notably, in serving the subpoena upon Mr. Lemonis, Campers Inn articulated no basis for why his deposition is necessary to obtain testimony concerning the witness's unique or superior knowledge. Campers Inn has not deposed party witnesses and has not deposed any other Camping World witnesses. Although Campers Inn previously subpoenaed—and received— any relevant documents related to Camping World's initial involvement in the transaction with Sellers, it has not examined a single witness concerning those documents. Under those circumstances, Campers Inn cannot possibly establish that Mr. Lemonis has unique or superior personal knowledge of events relevant to the performance of the agreement between Camping World and Sellers. As a result, Campers Inn's subpoena does not satisfy the first prong of the apex doctrine. *See George*, 2020 WL 2745724, at *3.

The subpoena also does not satisfy the second prong of the apex doctrine. As described above, no other depositions—neither of the parties, nor of third parties—have taken place in this matter. Thus, not only are the subpoenas Campers Inn's first subpoenas seeking deposition testimony from Camping World employees, they also represent Campers Inn's first effort to seek testimony from *anyone* in this litigation. In addition, the subpoenas were issued to Lemonis, Moody, and Erickson simultaneously. Campers Inn therefore cannot be seeking testimony from Mr. Lemonis because it could not obtain information from lower-level employees or through the testimony of actual parties to this litigation. The subpoena thus fails the second prong of the apex doctrine because Campers Inn is unable to show that whatever information it seeks from Mr. Lemonis cannot "be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." *George*, 2020 WL 2745724, at *3.

For these reasons, the Court should quash the subpoena directed to Mr. Lemonis. In the alternative, the Court should quash the subpoena to Mr. Lemonis temporarily until Campers Inn

deposes party witnesses, lower-level employees of Camping World, and a corporate

representative of Camping World, and it should also require Campers Inn to show that Mr.

Lemonis's deposition remains necessary after exhausting those options.  *See Galmines*, 2015 WL

4973626, at *3 (granting motion to quash subpoena to CEO without prejudice but conditioning

reconsideration on plaintiff's efforts to obtain evidence supporting the need for the CEO's

deposition through less burdensome means); *Reif*, 248 F.R.D. at 454 (E.D. Pa. 2008) (same).

### B.      This Court Should Quash All Three Subpoenas as Unduly Burdensome to the Deponents.

All three of the subpoenas at issue should be quashed as harassing and unduly

burdensome because they seek testimony and documents not relevant to the claims here, call for

the production of documents from a third party that could be obtained from the parties to this

dispute, and because the document requests are broad, vague, and duplicative.  The Court should

also quash the subpoenas because Campers Inn is using them as an improper means to conduct

discovery against Camping World in this case for use in the state court action.

Rule 45 requires a court to quash a subpoena that "subjects a person to undue burden."

*Kelley*, 2016 WL 8673055, at *2. (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).  Courts examine

several factors to determine whether a subpoena imposes such a burden: "(1) relevance of the

requested materials, (2) the party's need for the documents, (3) the breadth of the request, (4) the

time period covered by the request, (5) the particularity with which the documents are described,

(6) the burden imposed, and (7) the recipient's status as a non-party."  *Frank*, 2015 WL 4770965,

at *4 (E.D. Pa. Aug. 13, 2015).  Under the federal rules, nonparties are entitled to "greater

protection from discovery than a normal party."  *Kelley*, 2016 WL 8673055, at *2.  Movants are

nonparties to the litigation and therefore entitled to heightened protection.

The subpoenas here impose an undue burden in four ways. First, the subpoenas seek documents and testimony that are not relevant to Campers Inn's defenses or counterclaims in this litigation, and which Campers Inn therefore does not need. Under similar circumstances, courts have quashed subpoenas that seek deposition testimony and assert expansive document requests relating to a non-party's activities absent a "strong[] showing that [the non-party] has evidence necessary to prove [the issuing party's] claims." *Lady Liberty Transp. Co. v. Philadelphia Parking Auth.*, 2007 WL 707372, at *9–10 (E.D. Pa. Mar. 1, 2007). In *Lady Liberty*, plaintiffs challenged certain regulations imposed on transportation services and issued a subpoena for testimony and expansive document requests to Representative John Perzel and his Chief of Staff, seeking evidence that Perzel conspired with the regulator to harm the plaintiffs. *Id*. at *9. The court pointed to several deficiencies in the subpoenas when it quashed them as unduly burdensome[3]: (1) the alleged conspiracy was not probative of the plaintiff's claims, and therefore not relevant; (2) the "dubious probative value" of the evidence sought did not support a "convincing need for the evidence"; and (3) absent a compelling need, the court was reluctant to force Representative Perzel and his staff to divert time from matters of importance requiring their attention.

As in *Lady Liberty*, Campers Inn cannot point to any compelling need that would justify their document requests or related testimony. Campers Inn first requests all documents related in any way to the transaction between Plaintiffs and Camping World. But Camping World has already produced to Campers Inn documents reflecting its initial interactions with Plaintiffs in

---

[3] Although Representative Perzel and his Chief of Staff asked the court to quash the subpoenas on the grounds of legislative privilege, the court concluded it need not reach that issue because the subpoenas subjected Representative Perzel and his chief of staff to an undue burden, and the court quashed them on that basis instead. *Lady Liberty*, 2007 WL 707372, at *9.

response to the prior document subpoena.  Any additional communications concerning negotiations between Camping World and Plaintiffs have no bearing on the question of why Campers Inn failed to close its transaction with Plaintiffs or whether the parties to this action complied with their obligations under the contract between them.[4]

Next, Campers Inn seeks documents about this litigation.  Logically, such documents cannot have any probative value concerning the question of the failed transaction between Plaintiffs and Campers Inn, because the litigation did not begin until after the transaction failed.  Instead, Campers Inn again seeks to dramatically expand the scope of this case by pursuing discovery about the litigation itself, which constitutes an improper attempt to seek privileged documents as explained *infra* in Section IV.C.

Finally, Campers Inn seeks documents concerning the "ongoing dispute" between Plaintiffs and Campers Inn, including documents concerning "potential risk or liability" and any obligation of Plaintiffs to indemnify Camping World.  Again, the question of whether Plaintiffs are obligated to indemnify Camping World has no bearing on the facts and circumstances related to the failure of the transaction between Plaintiffs and Campers Inn.[5]  Thus, this Court should find that Camping World is not entitled to the discovery it seeks because no nexus exists between the documents or testimony sought and the claims and defenses between the parties in this litigation.

---

[4] Reinforcing this conclusion is the fact that this Court considered and rejected Campers Inn's attempts to bring Camping World into this lawsuit through an amendment to its counterclaims.  (*See* ECF 34, Exhibit F.)  In doing so, the Court correctly determined that Camping World did not engage in conduct relevant to any purported breach by Sellers—the very existence of which the Court's Order also undermines.

[5] In addition, as described *infra* in Section IV.C, this request plainly calls for document subject to the work product and common interest doctrines.

Second, the scope of the document requests contained in the subpoenas is overly broad, the documents are not described with particularity, and there is no appropriate limit to a responsive time period. Campers Inn seeks three vague and expansive categories of documents, as described above. (*See* Exhibits A-C at 6.) In *Lady Liberty*, the plaintiffs' subpoenas similarly requested from a third party "[a]ll documents relating to the interaction with witness directly or indirectly regarding limousine and/or transfer vehicles and Philadelphia Parking Authlrity [sic] in whole or in part." *Lady Liberty*, 2007 WL 707372, at *9 (internal citation and quotation marks omitted). In view of the plaintiffs' claims and their failure to make an adequate showing of relevance, the court found a request seeking documents "having anything to do 'directly or indirectly' with airport-transfer services" imposed an undue burden because it was too broad. *Id*.

Camping World's subpoenas likewise request documents having anything to do with Camping World's acquisition of the properties, the current litigation, or Camping World's assessment of the risks and liability of the transaction with Sellers. The document requests are so broad in scope that they encompass documents having nothing to do with the claims or defenses in this litigation, and they do not describe the documents sought by the subpoenas with any particularity. Further, the requests are duplicative because the second and third requests deal with this litigation and the "ongoing dispute" between the Plaintiffs and Campers Inn, which now are essentially one and the same.

The subpoena also makes no attempt to limit the document requests to a relevant period, requesting instead that Movants produce "all documents and communications" concerning a series of broad subjects. Given the limited relevance of Camping World's involvement to the question of the parties' performance under their agreement, the requests should be limited to the period immediately before and including Campers Inn's failure to close. But Camping World's

limited involvement in the events of that period makes it likely that Campers Inn can obtain (and likely has obtained) all relevant documents through the exchange of party discovery with Sellers, further bolstering the notion that Campers Inn does not need to obtain the same documents from Movants.

Third, the subpoenas seek information that could more easily be obtained from the parties to this litigation rather than from the non-party Movants. Each of the document requests seeks documents and communications "between" Camping World and Plaintiffs. (*See* Exhibits. A-C, at 6.) Campers Inn could obtain such documents communications from Plaintiffs—who are parties to this litigation—but instead seek to burden Movants with their production, despite having already received a document production from Camping World in response to the prior subpoena.

Fourth, and finally, Campers Inn's implicit purpose for serving these subpoenas is to obtain discovery to use against Camping World in the pending state court matter and circumvent the discovery process there. This Court should reject that attempt for several reasons. To begin with, the state court only just ruled on Camping World's preliminary objections, and the parties have not yet engaged in written discovery or depositions in that action. Campers Inn is therefore using the discovery process in this Court to obtain documents and testimony for use against Camping World if the state court action moves forward. Through the subpoenas, Campers Inn seeks a free opportunity to depose Camping World witnesses about the matter pending in state court when discovery in that case has not yet begun. Campers Inn's efforts here are an abuse of this Court's discovery process, and Campers Inn should not be permitted to pursue claims against Camping World in a different venue where Camping World lacks the means to obtain reciprocal discovery. Thus, the Court should quash the subpoenas directed to Camping World's

witnesses and allow discovery to take place in the state court action concerning Campers Inn's surviving claim.

In sum, the subpoenas issued to Movants places impose a burden that outweighs any benefit that Campers Inn may derive from them, and the Court should therefore quash the subpoenas as unduly burdensome. *See Kelley*, 2016 WL 8673055, at *2; *Galmines*, 2015 WL 4973626, at *3 (granting motion to quash because "the burden or expense of the proposed discovery outweigh[ed] its likely benefits").

### C.   The Subpoenas Should be Quashed Because they Improperly Seek Privileged Documents

The subpoenas should also be quashed—or modified—to the extent that they seek documents subject to the common interest doctrine and the work product doctrine. The common interest doctrine enables parties with a common legal interest and who are involved in similar or related legal proceedings to share privileged communications and attorney work product so they can prepare an adequate defense without waiving either privilege. *See Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 283 (W.D. Pa. 2014). In addition, the work product doctrine protects from disclosure documents prepared in anticipation of litigation or for use in litigation, even where such information is shared with a third party, so long as the manner of sharing the information does not significantly increase the likelihood that an adversary will obtain the work product information. *See* Fed. R. Civ. P. 26(b)(3); *Bousamra v. Excela Health*, 210 A.3d 967, 978 (Pa. 2019).

A subpoena that demands the production of documents or information that is protected from discovery by a privilege should be quashed or modified to the extent it seeks privileged information. *See Nedler v. Vaisberg*, 2006 WL 2460892, at *5 (E.D. Pa. Aug. 22, 2006) (quashing subpoena seeking privileged communications); *Nupson v. Schnader Harrison Segal &*

*Lewis LLP*, 2021 WL 1293557, at *13 (E.D. Pa. Apr. 7, 2021) (denying discovery of privileged information). Here, the subpoenas demand the production of documents relating in any way to this litigation or to the "ongoing dispute" between Plaintiffs and Campers Inn. (*See* Exhibits A-C, at 6.) Both Camping World and Plaintiffs have a common interest in defending against Campers Inn's claims—indeed, Campers Inn sought an order in the state court action binding Camping World to the results of this action to the same degree as if it was a party to this litigation.

The Court should therefore quash the subpoenas because they seek information protected by the common interest doctrine and the work product doctrine and, thus, shielded from discovery.

> **D.** **Alternatively, the Court Should Grant a Protective Order That Limits the Scope of Discovery.**

In the alternative, the Court should enter a protective order limiting the scope of discovery to communications between Camping World and Sellers about Campers Inn or the transaction between Sellers and Campers Inn. Federal courts have discretion "to issue protective orders that impose restrictions on the extent and manner of discovery where necessary 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (quoting Fed. R. Civ. P. 26(c)). Protective orders are warranted "when the party seeking the protective order 'show[s] good cause by demonstrating a particular need for protection.'" *Nothstein v. USA Cycling*, 337 F.R.D. 375, 393 (E.D. Pa. 2020) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Good cause exists when the party seeking the order demonstrates that an injury will result in the absence of an order, and that injury needs only to be one of the grounds for an order set forth in Rule 26. *See id*.

The federal rules also offer movants two ways to protect the disclosure of sensitive information. *Pearson*, 211 F.3d at 65. The movant may assert either that an evidentiary privilege shields the information from disclosure under Rule 26(b)(1), or that discovery should still be limited to protect the disclosure of private or confidential information under Rule 26(c). *Id*. Movants object to the subpoenas here on three grounds that warrant a protective order.

First, Movants object to the subpoenas to the extent they impose an undue burden for the reasons explained in Section IV.B, *supra*. In addition to providing the Court a basis to quash the subpoenas, the undue burden of the subpoenas is also an appropriate basis for the Court to grant a protective order under Rule 26(c). *See Nothstein*, 337 F.R.D. at 393.

Movants further object to the subpoenas to the extent that they seek the production of documents that are protected by the common interest doctrine or the work product doctrine and therefore excluded from discovery. As described in greater detail above, communications between Camping World and Plaintiffs may be protected by both doctrines. *See Serrano*, 298 F.R.D. at 283; *Bousamra*, 210 A.3d at 978. A protective order is therefore appropriate under Rule 26(b)(1) to prevent Campers Inn from using its subpoenas to discover any such communications between Sellers and Camping World.

Finally, movants object to the subpoenas to the extent that they reach any of Camping World's confidential business information. Under the federal rules, courts may enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012) (quoting Fed. R. Civ. P. 26(c)(1)(7), now codified as Fed. R. Civ. P. 26(c)(1)(G)). The scope of the requests reach confidential business documents exchanged between Sellers and Camping World as part of their

transaction, and a protective order is appropriate to prevent the disclosure of those documents to a competitor like Camper's Inn because the disclosure would injure Camping World.

Accordingly, Campers Inn's document requests should be limited to communications about the deal between Campers Inn and Sellers and Campers Inn's allegations about the breach of confidential information. The terms of the deal between Camping World and Sellers and any confidential information related to that deal are irrelevant to Campers Inn's claims and should not be disclosed to Campers Inn as a competitor within the same industry. If the Court declines to quash the subpoenas directed to Movants, it should craft a protective order instead that prevents Campers Inn from obtaining irrelevant, privileged, and confidential information related to the deal between Camping World and Sellers.

## V.     RELIEF

Given the small universe of relevant documents likely to be in Camping World's possession, Campers Inn's three subpoenas represent a fishing expedition for irrelevant evidence and are therefore unduly burdensome. On that basis, Camping World respectfully requests that the Court quash all three subpoenas in their entirety. But even if the Court is inclined to allow Campers Inn to take deposition testimony or obtain documents, it should restrict Campers Inn to a 30(b)(6) deposition of Camping World limited to an appropriate set of relevant topics and issue an appropriate protective order to prevent disclosure of privileged and confidential documents.

DUANE MORRIS LLP

*/s/ James H. Steigerwald*
James H. Steigerwald (82469)
Simeon S. Poles (324895)
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

*Attorneys for Movants*

Dated: September 15, 2021

## CERTIFICATE OF SERVICE

I, James H. Steigerwald, hereby certify that on September 15, 2021, I caused a true and correct copy of the foregoing Movants' Memorandum of Law In Support of Motion by Nonparties to Quash Defendants' Subpoenas or, in the Alternative, for a Protective Order to be served on counsel for all parties via this Court's electronic filing system.

/s/ James H. Steigerwald
James H. Steigerwald

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONOVAN REALTY, LLC, DD&A TILDEN REALTY, LLC, ZERTECK, INC., TILDEN RECREATIONAL VEHICLES, INC., and DERWOOD LITTLEFIELD, | : : : : : : | |
| Plaintiffs-Counterclaim Defendants, | : : : : | |
| v. | : : : | CIVIL ACTION NO. 20-CV-03954-PBT |
| CAMPERS INN HOLDING CORPORATION, CI OF HAMBURG, LLC, and CI OF WEST COXSACKIE, LLC, | : : : : : : | |
| Defendants-Counterclaim Plaintiffs. | : : | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the motion of Movants Marcus Lemonis, Brent Moody, and Josh Erickson to quash the nonparty subpoenas *duces tecum* issued to them by Defendants Campers Inn Holding Corporation, CI of Hamburg, LLC, and CI of West Coxsackie, LLC, or, in the alternative, for a protective order, **IT IS HEREBY ORDERED** that the motion is **GRANTED** and the subpoenas issued to Movants are quashed.

_____
**Hon. Petrese B. Tucker, U.S.D.J.**