**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONOVAN REALTY, LLC, ET AL., | |
| Plaintiffs/ Counterclaim Defendants, | NO. 20-CV-03954-CMR |
| v. | |
| CAMPERS INN HOLDING CORP., ET AL., | |
| Defendants / Counterclaim Plaintiffs. | |

**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table Of Authorities ...................................................................................................... i

Preliminary Statement .................................................................................................. 1

Facts ............................................................................................................................. 1

    A.    The Parties' Agreements Required Closing on April 15, 2020, Time Being of The Essence .................................................................................. 2

    B.    Campers Inn Did Not Fulfill Its Obligations Under the Parties' Contracts .................................................................................................... 3

    C.    Campers Inn Failed to Close on April 15 and the Parties Extended the Closing Date to July 31, 2020 .................................................................... 4

    D.    All Parties Interpreted the Addendum as Establishing An Absolute Deadline of July 31, 2020 To Close the Real Estate Transaction ............... 6

    E.    Again, Campers Inn Fails to Close by the Deadline ................................. 7

    F.    Following Campers Inn's Second Failure to Close Timely, BNRV Moved on to Another Buyer and Commenced this Litigation .................... 7

Argument ...................................................................................................................... 9

    I.    Time Was of the Essence as to the Deadline for the Real Estate Closing – July 31, 2020 at 5:00 P.M. ............................................................................... 9

    A.    New York Law on Time of the Essence ..................................................... 9

    B.    The Initial Agreements Provided that Time Was of the Essence as to the Two Separate Closings; the Addendum Did Not Change That. ............... 11

    C.    Campers Inn Cannot Meet its Burden of Showing that Sellers Waived Their Right to a Time-of-the-Essence Closing. ...................................... 13

    II.    In the Addendum the Parties Agreed that the Only Way the Real Estate Closing Could Occur After July 31, 2020 Was If the Specific Conditions in Section 3(e) Were Satisfied. .............................................................................................. 15

    III.    The Law-of-the-Case Doctrine Does Not Require This Court to Ignore New York Law on Time of the Essence ......................................................................... 16

    A.    The MJP Opinion Depends Upon a Standard of Review That Is No Longer Applicable. ................................................................................ 17

B.      An Interpretation of the Addendum as Not Requiring a Time-of-the-Essence Closing Violates New York Law. ................................................. 18

IV. Campers Inn is Not Entitled to Specific Performance ......................................... 21

Conclusion ....................................................................................................... 23

Certificate of Service ....................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*#1 Funding Ctr., Inc. v. H&G Operating Corp.*,
  48 A.D.3d 908 (N.Y. App. Div. 2008) ....................................................................9, 22

*12 Baker Hill Rd., Inc. v. Miranti*,
  130 A.D.3d 1425 (N.Y. App. Div. 2015) ......................................................... *passim*

*28th Highline Assocs., L.L.C. v. Roache*,
  No. 18 CIV. 1468, 2019 WL 917208 (S.D.N.Y. Feb. 25, 2019), *aff'd*,
  826 F. App'x 70 (2d Cir. 2020) .......................................................................10, 14, 20

*Arizona v. California*,
  460 U.S. 605 (1983)...............................................................................................16, 17

*Bardi v. Estate of Morgan*,
  61 A.D.3d 625 (N.Y. App. Div. 2009) .........................................................................14

*Barnes v. McKellar*,
  644 A.2d 770 (Pa. Super. Ct. 1994)..............................................................................21

*Cloke v. Findlan*,
  165 A.D.3d 1545 (N.Y. App. Div. 2018) .....................................................................22

*CNA Ins. Grp. v. Nationwide Mut. Ins. Co.*,
  No. CIV. A. 98-1962, 2000 WL 288241 (E.D. Pa. Mar. 8, 2000)....................17, 20, 21

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*,
  988 F.2d 414 (3d Cir. 1993)...................................................................................17, 18

*Deckoff v. W. Manning Family Ltd. P'ship*,
  193 A.D.3d 812 (N.Y. App. Div. 2021) .......................................................................21

*Fagan v. City of Vineland*,
  22 F.3d 1283 (3d Cir. 1994)..................................................................................16, 17

*Golfo v. Kycia Assocs., Inc.*,
  45 A.D.3d 531 (N.Y. App. Div. 2007) .........................................................................10

*Grace v. Nappa*,
  389 N.E.2d 107 (N.Y. 1979)...........................................................................................9

*K.S. v. Sch. Dist. of Philadelphia*,
  No. CIV.A. 05-4916, 2005 WL 3150253 (E.D. Pa. Nov. 22, 2005) ...........................17

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*,
No. CIV.A. 05-281, 2011 WL 611802 (E.D. Pa. Feb. 17, 2011), *aff'd*,
687 F.3d 620 (3d Cir. 2012)..................................................................................18

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
660 N.E.2d 415 (N.Y. 1995)..................................................................................15

*Parker Hannifin Corp. v. N. Sound Props.*,
No. 10 CV 6359, 2013 WL 1932109 (S.D.N.Y. May 8, 2013)............................ *passim*

*Paul Revere Protective Life Ins. Co. v. Weiss*,
535 F. Supp. 379 (E.D. Pa. 1981) .............................................................................9

*Pub. Interest Research Grp. of N.J. v. Magnesium Elektron*,
123 F.3d 111 (3d Cir.1997)....................................................................................16

*Sherman v. Real Source Charities, Inc.*,
41 A.D.3d 946 (N.Y. App. Div. 2007) ...........................................................9, 14, 20

*United States v. Wecht*,
619 F. Supp. 2d 213 (W.D. Pa. 2009)....................................................................16

*Ward Cap. Mgmt. LLC v. New Pelham Parkway N. LLC*,
165 A.D.3d 477 (N.Y. App. Div. 2018) ....................................................11, 13, 14, 19

*WWW Assocs. v. Giancontieri*,
566 N.E.2d 639 (N.Y. 1990)...................................................................................19

**PRELIMINARY STATEMENT**

This dispute arises from a failed transaction for the sale of two recreational vehicle dealerships and the land on which they sit.  The parties' views of why the transaction failed diverge, but certain facts are clear.  First, the parties signed contracts providing that time was of the essence for an April 15, 2020 closing, but Defendants/Counterclaim Plaintiffs ("Campers Inn" or "Buyers") were not willing or able to close the transaction on that date.  Second, the parties executed an amendment to their contracts, extending the deadline for the transaction to close.  Third, Campers Inn did not tender the purchase price by the extended deadline, and the transaction did not close.  Finally, the parties do not dispute that, after Campers Inn failed to close, Plaintiffs/Counterclaim Defendants ("BNRV" or "Sellers") found a replacement buyer for the dealerships, closed on that transaction, and no longer hold title to the properties that gave rise to this dispute.  Based on those undisputed facts and well-established rules of New York law, BNRV seeks partial summary judgment on two narrow issues: (1) on the interpretation of the parties' agreements regarding the deadline for closing the transaction; and (2) on that portion of Campers Inn's counterclaim that seeks specific performance.

**FACTS**

BNRV and Campers Inn both operate dealerships for recreational vehicles and campers. Prior to the events at issue in this litigation, BNRV owned and operated a dealership located in West Coxsackie, New York (the "New York Dealership") and one located in Hamburg, Pennsylvania (the "Pennsylvania Dealership").  Ex. 1 (Defendants Campers Inn Holding Corporation et al.'s Answer and Counterclaims) ¶ 3.  Plaintiff Donovan Realty, LLC owned the real property located in New York on which the New York Dealership was situated (the "New York Property") and plaintiff DD&A Tilden Realty, LLC owned the real property located in

Pennsylvania on which the Pennsylvania Dealership was situated (the "Pennsylvania Property"). *Id.* at ¶ 4.

After extensive negotiations, Campers Inn and BNRV entered into two agreements on February 4, 2020: an Asset Purchase Agreement (the "APA"), which provided for the sale of substantially all the assets of the New York Dealership and the Pennsylvania Dealership, and an Agreement for Purchase and Sale of Real Estate and Related Property (the "RPA"), which provided for the sale of the New York Property and the Pennsylvania Property. Exs. 2, 3. The APA required Campers Inn to place a deposit into escrow in the amount of $250,000 in two payments, one upon execution of the contracts and one after diligence was completed. Ex. 2 § 1.4(b). The contracts are governed by New York law. *Id*. § 10.5.

A.     **The Parties' Agreements Required Closing on April 15, 2020, Time Being of The Essence**

The APA provides that the closing of the transactions contemplated in the APA and the RPA "shall take place on or before April 15, 2020 . . . time being of the essence." Ex. 2 § 7.1. Pursuant to the APA, "[a]ll conditions precedent to Buyer's performance shall be deemed satisfied in the event Buyer authorizes any public announcement of the Transactions." *Id*. § 6.1. As with any agreement of sale, the APA obligated Campers Inn to convey the full purchase price to Sellers at closing. *Id*. § 7.2(b)(ii). Nothing in the APA permits Campers Inn to close the transaction without tendering the purchase price if it had not received financing. *See id*. § 7.2. Notably, under the RPA, if Campers Inn wished to use a title insurer to serve as an escrow agent of documents and funds at closing, "all required documents and funds must be received" by that agent at least one business day prior to the closing date. Ex. 3 § 9.

The RPA required Campers Inn to obtain and deliver to BNRV, by February 24, 2020, a written title commitment for an "ALTA Owners Title Insurance Policy," together with the

2

documents referenced in the commitment. *Id*. § 5(a)(i). The RPA also established an inspection and title review period of thirty days, until March 5, 2020. *Id*. § 6(a). During that period, Campers Inn was to complete any work required to examine and assert any objections to the condition of title to the New York Property or the Pennsylvania Property. *Id*. §§ 5, 6. In addition, if Campers Inn deemed a new survey of the properties necessary, it was required to obtain such a survey prior to March 5, 2020:

> If Buyer desires to obtain a new survey of the Property, then, on or before the expiration of the Inspection Period, Buyer, at its sole cost and expense and at its sole option, may cause an ALTA/ASCM survey of the Property to be prepared (the "Survey"), certified to Buyer, Seller and Title Company, and shall deliver a full-size copy to Seller and such parties within the Inspection Period.

*Id*. § 5(b). Campers Inn was obligated to provide written notice to BNRV of any issues disclosed by the survey, such as "encroachments, overlaps, gaps, closure errors, or other matters" by March 5, 2020, and on the same conditions as the identification of any other title defects. *Id*.

The APA made clear the consequences if Campers Inn failed to close the transaction on or before April 15, 2020 as required by the parties' agreements: "if Seller is ready, willing and able to consummate the Transactions and Buyer fails to consummate such Transactions in accordance with this Agreement, for any reason other than the non-satisfaction of the conditions set forth in Sections 6.1(b)-6.1(f), the Deposit shall be delivered to Seller as liquidated damages, which shall be Seller's sole and exclusive remedy against Buyer, at which time this Agreement shall be *null and void and neither party shall have any rights or obligations under this Agreement*." Ex. 2. § 9.2 (emphasis added).

**B.      Campers Inn Did Not Fulfill Its Obligations Under the Parties' Contracts**

Despite the requirements of the Parties' agreements, Campers Inn failed in February and March 2020 to complete its diligence obligations. Campers Inn did not even place orders for title

commitments until February 29, 2020: five days after the deadline to provide them to BNRV. Ex. 4.  Similarly, although Campers Inn was aware in February 2020 that its lender, M&T Bank ("M&T"), would require a survey of the properties, Campers Inn took no action whatsoever in February or March 2020 to identify or retain a surveyor.  *See* Ex. 5 (Defendants/Counterclaim Plaintiffs' Objections and Responses to Plaintiffs/Counterclaim-Defendants' First Set of Requests for Admissions) at Req. 6; Ex. 6 (Jeppsen Dep. Tr.) at 151:19-23, 155:10-22.  Campers Inn identified no title defects during the title examination period provided by the RPA.  Ex. 5 at Req. 7.

Despite its failure to comply with its contractual obligations to accomplish tasks necessary to close the transaction, Campers Inn nevertheless pushed BNRV to publicly announce the sale. *See* Ex. 7.  After the inspection period concluded, BNRV acquiesced and a press release, approved by both Campers Inn and BNRV, was issued announcing the transaction on March 9, 2020.  Ex 8. With that announcement, all conditions precedent to the buyers' obligations were deemed fulfilled. Ex. 2 § 6.1 ("All conditions precedent to Buyer's performance shall be deemed satisfied in the event Buyer authorizes any public announcement of the Transactions.").

### C.    Campers Inn Failed to Close on April 15 and the Parties Extended the Closing Date to July 31, 2020

On April 15, 2020, BNRV stood ready, willing, and able to close on the parties' agreements.  Ex. 9 at 1.  Campers Inn, however, was not willing or able to close the transaction on that date.  *Id*.

Throughout April 2020, the parties negotiated the terms of a possible extension of the closing date.  As a result of those negotiations, on or around April 24, 2020, the parties executed the First Addendum to Asset Purchase Agreement and Purchase and Sale Agreement (the "Addendum" and, together with the APA and the RPA, the "Transaction Documents").  Ex. 9. The Addendum provides that "[e]xcept as modified herein, all terms of the Transaction

Documents, as defined in the APA, shall remain in effect." *Id*. § 4.  The terms of the Addendum governed only "[i]n the event of any contradiction between the terms of this Addendum and the Transaction documents." *Id*.

The parties agreed in the Addendum a reduction in the purchase price set forth in the APA. *Id*. § 3(b).  They further agreed to increase the amount of funds Campers Inn placed on deposit by $500,000, to a total of $750,000.  *Id*. § 3(a).

No term in the Addendum eliminated the time of the essence provision in the APA.  *See generally id*.  Rather, the Addendum amended the provisions of the APA concerning the closing of the transaction only "to the extent necessary" to provide for a later closing date.  *Id*. § 2.  The Addendum set a deadline for the closing of the purchase of the real estate at "on or before 5:00 p.m. on Friday, July 31, 2020."  *Id*. § 2.  This deadline could be extended further only upon fulfillment of certain conditions precedents set forth in section 3(e) of the Addendum.  *Id*. § 3(e).

The Addendum contains several provisions specifically geared to prevent any further delay of the closing due to Campers Inn's failure to complete its closing obligations.  First, the parties agreed to the $500,000 increase of funds on deposit, and that the full $750,000 deposit could only be distributed in one of two ways: (1) against the purchase price at closing; or (2) released as damages to BNRV if Campers Inn failed to close.  *Id*. § 3(a).  Second, to underline the requirement that time was of the essence to close the transaction on or before July 31, 2020, the parties also included a provision that required Campers Inn to execute a letter providing that the full $750,000 deposit would be disbursed automatically to BNRV at 5:01 PM on July 31, 2020, unless Campers Inn fulfilled the conditions precedent to extend the closing date.  *Id*. § 3(f).  Third, the parties agreed that, the conditions precedent to extend closing would apply only if Campers Inn acted "promptly," and "work[ed] in good faith" to obtain materials necessary for closing "on a timely

basis." *Id*. § 3(e). The Addendum also includes a requirement that Campers Inn identify the vendors it retained to prepare closing materials to BNRV, so that BNRV could be assured that Campers Inn actually retained such vendors on a timely basis. *See id*.

**D.** **All Parties Interpreted the Addendum as Establishing An Absolute Deadline of July 31, 2020 To Close the Real Estate Transaction**

After the Addendum was signed, Campers Inn admitted repeatedly that the transaction had to close by July 31, 2020, consistent with its agreement that time was of the essence. Matt Jepson, Campers Inn's current CFO, informed Campers Inn's banker that July 31, 2020 was "the very end date" for the transaction. Ex. 10 (Gollnitz Dep. Tr.) at 189:19-191:2. Matt Jeppsen also told a Campers Inn consultant that the parties' contracts required closing by July 31, 2020. Ex. 11 ("While I haven't seen it, it's my understanding the Purchase/Sale Agreement requires closing by 7/31."); Ex. 12 (Sagneri Dep. Tr.) at 172:10-24. That consultant understood that "time is of the essence, as you know," and so stated in communications to Campers Inn's executive leadership. Ex. 11. No one from Campers Inn disputed his understanding. *See id*. Further, in internal communications, Jeff Hirsch, Campers Inn's CEO, urged Mr. Jeppsen that "[t]his has to get done by the 31st" because otherwise "[w]e will lose a lot of money if they are not forced to extend." Ex. 13 at 32. Mr. Jeppsen responded that he was "doing everything I can to make that happen" and that he understood the consequences of a failure to close on July 31, 2020. *Id*. Indeed, when the closing did not occur on July 31, 2020, Campers Inn's counsel wrote to BNRV on August 3, 2020 and expressly asserted that time was of the essence in the transaction: "[t]ime is of the essence for Seller to satisfy its obligations under all agreements." Ex. 14 at 4.

6

### E.    Again, Campers Inn Fails to Close by the Deadline

There is no dispute that the transaction failed to close on July 31, 2020.  Ex. 1 ¶ 67.  There is also no dispute that Campers Inn failed to tender the full purchase price on July 31, 2020, or on the prior business day, as required by the parties' agreements.  Ex. 5 at Req. 55, Req. 56; Ex. 2 § 9.  It is undisputed that M&T did not fund Campers Inn's loan on July 31, 2020.[1]  Ex. 6 at 281:24-282:1; Ex. 15 (Hirsch Dep. Tr.) at 222:22-223:6.  It is also undisputed that Campers Inn had the funds to close the transaction on July 31, 2020 even without the loan from M&T, but made no effort to tender those funds to BNRV at any point on or before July 31, 2020.  *See* Ex. 6 at 285:9-13, 287:7-13; Ex. 15 at 226:4-15.

### F.    Following Campers Inn's Second Failure to Close Timely, BNRV Moved on to Another Buyer and Commenced this Litigation

After the second failed closing, BNRV – tired of delays – moved on to find another buyer for the New York Dealership and the Pennsylvania Dealership.  On August 2, 2020, BNRV demanded disbursement of the deposit, consistent with the provisions of the Addendum.  Ex. 16.  The next day, August 3, 2020, Campers Inn objected to the disbursement of the deposit, and purported to identify "title defects" related to the properties.  Ex. 14.  Although Campers Inn asserted a right to extend the closing deadline to August 5, 2020, based on the purported title defects, it acknowledged that time was of the essence in the transaction.  *Id*. at 4 ("Time is of the essence for Seller to satisfy its obligations under all agreements.").  Campers Inn did not tender the purchase price on August 5, 2020, or at any time after July 31, 2020.

---

[1] While the parties disagree about the reasons why M&T did not fund the loan on July 31, 2020, which is an issue of fact to be determined at trial, Campers Inn's own banker has testified that there was nothing BNRV could have done to enable M&T to fund the transaction on July 31, 2020.  Ex. 10 at 188:1-6.

7

On August 13, 2020, BNRV initiated this action to obtain the deposit funds to which it is entitled under the parties' contracts and the other damages it incurred by Campers Inn's repeated failure to close on the purchase of the New York Dealership and the Pennsylvania Dealership. *See* Ex. 17 at Docket Entry ("D.E.") No. 1. On August 25, 2020, Campers Inn filed an answer and counterclaim, seeking specific performance of the parties' contracts and damages. Ex. 1 at 36. Together with the counterclaim, Campers Inn moved for expedited discovery and a preliminary injunction ordering specific performance. D.E. Nos. 9, 10. On August 28, 2020, BNRV answered Campers Inn's counterclaim and moved for partial judgment on the pleadings. D.E. Nos. 13, 15. On September 3, 2020, BNRV consented to the motion for expedited discovery, and informed the Court and Campers Inn that "[i]n the absence of an order enjoining the sale of the subject assets" to a replacement buyer, BNRV would sell the NY Dealership and the PA Dealership to the replacement buyer it had identified. D.E. No. 17 at 7. Campers Inn never sought such an order, and none was ever entered. *See generally* Ex. 17. Accordingly, BNRV closed on the sale to the replacement buyer on October 9, 2020, and transferred title to both the Pennsylvania Property and the New York Property to the replacement buyer. Ex. 18; Ex. 19.

On November 2, 2020, Campers Inn filed a motion to amend its counterclaims and join the replacement buyer as an additional counterclaim-defendant. D.E. No. 26. On November 16, 2020, BNRV opposed the motion on the grounds that the proposed pleading contained false statements of fact and futile claims. D.E. No. 29 at 1.

The Court denied Campers Inn's motion to amend its counterclaims on April 6, 2021. D.E. No. 34. The Court denied the motion for preliminary injunction and the motion for judgment on the pleadings on November 10, 2021. D.E. No. 47.

**ARGUMENT**

BNRV seeks partial summary judgment on the limited issues of the interpretation of the contracts at issue in this litigation and Campers Inn's entitlement to an order of specific performance. "Summary judgment is properly used for interpreting a contract whose terms are considered by opposing parties to be clear and unambiguous, despite the parties' divergent views of what the agreement provided." *Paul Revere Protective Life Ins. Co. v. Weiss*, 535 F. Supp. 379, 383 (E.D. Pa. 1981) (*quoting Goldinger v. Boron Oil Co.*, 375 F. Supp. 400, 413 (W.D. Pa. 1974)). As set forth below, under the proper interpretation of the parties' contract as required by New York law, Campers Inn was required to close its purchase of the New York Property and the Pennsylvania Property by July 31, 2020, unless it satisfied the conditions precedent to extend the closing deadline. Moreover, Campers Inn's request for specific performance must be denied because BNRV no longer holds title to the properties and because Campers Inn never tendered performance to BNRV.

**I.    TIME WAS OF THE ESSENCE AS TO THE DEADLINE FOR THE REAL ESTATE CLOSING – JULY 31, 2020 AT 5:00 P.M.**

**A.    New York Law on Time of the Essence**

In a sale agreement providing that time is of the essence and identifying a closing date, the closing must take place by that date. *E.g., Grace v. Nappa*, 389 N.E.2d 107, 109 (N.Y. 1979). If the buyer under such an agreement does not close by that date for any reason, the buyer is in default and the seller has no obligation to close. *Id.*; *see also #1 Funding Ctr., Inc. v. H&G Operating Corp.*, 48 A.D.3d 908, 909 (N.Y. App. Div. 2008).

Under New York law, courts apply time-of-the-essence provisions to closing dates even if the contract allows the closing to be extended under specified circumstances. *See, e.g., Sherman v. Real Source Charities, Inc.*, 41 A.D.3d 946, 947–48 (N.Y. App. Div. 2007) (applying a general

9

time-of-the-essence provision to the closing date, even though the contract allowed the closing to be extended if certain conditions were met); *28th Highline Assocs., L.L.C. v. Roache*, No. 18 CIV. 1468, 2019 WL 917208, at *12 (S.D.N.Y. Feb. 25, 2019), *aff'd*, 826 F. App'x 70 (2d Cir. 2020) ("Courts [applying New York law] will enforce time of the essence clauses in contracts that nonetheless grant one or both parties the right to extend or modify the date of closing.").

A time-of-the-essence provision can be waived in an "express writing." *E.g., Golfo v. Kycia Assocs., Inc.*, 45 A.D.3d 531, 533 (N.Y. App. Div. 2007); *Parker Hannifin Corp. v. N. Sound Props.*, No. 10 CV 6359, 2013 WL 1932109, at *7 (S.D.N.Y. May 8, 2013). When considering whether a party has waived time of the essence in a contract amendment, courts must bear in mind that the "intent to waive must be clearly established and cannot be inferred from doubtful or equivocal… language." *Parker Hannifin*, 2013 WL 1932109 at *7 (internal quotation omitted). A waiver "is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence"; "[r]ather, there must be proof that there was a voluntary and intentional relinquishment of a known and otherwise enforceable right." *Golfo*, 45 A.D.3d at 533 (internal quotations omitted). The "burden of proof is on the person claiming the waiver of the right." *Id*. (internal quotation omitted).

Where a contract with a time-of-the-essence provision is amended, for example to provide for a later closing date, the time of the essence requirement applies to the new closing date, even if that provision is not expressly stated in the amendment. *See, e.g., Parker Hannifin*, 2013 WL 1932109 at **2-7, 7-8. In *Parker Hannifin*, a purchase agreement provided that time was of the essence as to all obligations. *Id*. at *2. The amended purchase agreement set a closing date of September 30, 2007, without expressly including the time-of-the-essence provision, and the parties later agreed in writing to extend the closing date to October 17, 2007, also without stating that time

10

was of the essence. *Id.* at \*\*2-3. The Court held that the time-of-the-essence provision stated in the original agreement carried through to both the amended agreement and the written extension of the closing date, such that time was of the essence as to the October 17, 2007 closing deadline. *Id*. at \*2, \*\*7-8. The Court found that the buyer failed to meet its burden of showing that the seller waived its right to the time-of-the-essence closing; since there was no closing on October 17, 2007, the buyer was in default and the contract terminated. *Id*. at \*7, \*9; *see also Ward Cap. Mgmt. LLC v. New Pelham Parkway N. LLC*, 165 A.D.3d 477, 477–78 (N.Y. App. Div. 2018) (where initial agreement provided that time was of the essence, and an amendment set the closing date, court held that time was of the essence as to the closing date); *12 Baker Hill Rd., Inc. v. Miranti*, 130 A.D.3d 1425, 1427 (N.Y. App. Div. 2015) (where initial agreement provided that time was of the essence, time was also of the essence in the "reinstatement" of that agreement by stipulation lacking time of essence clause).

## B.      The Initial Agreements Provided that Time Was of the Essence as to the Two Separate Closings; the Addendum Did Not Change That.

In the APA and RPA, the parties agreed that the Asset Closing date and the Real Estate Closing date were both time of the essence. Ex. 2 § 7.1 (Asset Closing and Real Estate Closing "shall take place on or before April 15, 2020…***time being of the essence***") (emphasis added); Ex. 3 § 9 (Real Estate Closing "shall take place as set forth in Section 7.1 of the [APA]"); *Id.* § 1(b) ("the provisions of the [APA] are incorporated herein and made a part hereof"). As long as the two closings took place "on or before April 15, 2020," the parties were free to have the closings on separate days. *See id.* The parties agreed to separate and distinct procedures and requirements for each of the two closings; for example, the Real Estate Closing had its own: (i) closing procedures (*see* Ex. 3 § 9, allowing a "mail away closing" or "escrow closing"); (ii) closing documents that

11

each party must provide (*see id.* at § 10); (iii) closing prorations and adjustments (*see id.* at § 11); and (iv) closing costs (*see id.* at § 12).

After Campers Inn failed to consummate either closing by April 15, 2020, the parties entered into the Addendum which assigned new deadlines for each of the two closings. *See* Ex. 9. Specifically, in Section 2 of the Addendum (titled "Postponement of the Closing Date of Transactions") the parties amended Section 7.1 of the APA (titled "TIME, DATE, AND PLACE OF CLOSING"), "to the extent necessary to be in accordance with the following:" (i) the Real Estate Closing must take place on or before July 31, 2020 at 5 p.m.; and (ii) the Asset Closing must take place on or before September 30, 2020 at 5 p.m. *Id* § 2. This section of the Addendum simply moves the deadlines for the two closings.

In the Addendum, the parties did not overturn the requirement that time was of the essence as to the closing deadline. Rather, Section 2 of the Addendum amended Section 7.1 of the APA – which contains the time-of-the-essence clause – only "to the extent necessary" to extend the deadlines for the two closings. It certainly is not necessary to extinguish the seller's right to insist on time being of the essence merely to move a closing deadline from one date to another. Further, the Addendum states that all terms of the APA and RPA remain in effect, except as modified in the Addendum. *Id.* § 4.

In addition, the Addendum provides that if Campers Inn does not consummate the Real Estate Closing by 5:01 p.m. on July 31, 2020 without having satisfied the specific conditions of Section 3(e), it loses its $750,000 deposit. *See id*. § 3(f). Providing for a transfer of a significant deposit one minute after the closing deadline is certainly consistent with time being of the essence.

Indeed, pursuant to New York law, when parties to a contract providing for time of the essence enter into a contract amendment allowing for a later closing date, **time remains of the**

12

**essence even if that phrase is not repeated in the amendment**.  *See, e.g., Parker Hannifin*, 2013 WL 1932109 at \*\*2-7, 7-8; *Ward*, 165 A.D.3d at 477–78; *see also Baker Hill*, 130 A.D.3d at 1427. Here, the Addendum did not need to repeat the time-of-the-essence provision; it remained in effect. *See id.*

Therefore, Section 7.1 of the APA as amended by the Addendum can only be read as follows: (i) the Real Estate Closing must occur on or before July 31, 2020 at 5 p.m., "time being of the essence"; and (ii) the Asset Closing must occur on or before September 30, 2020 at 5 p.m., "time being of the essence."

**C.      Campers Inn Cannot Meet its Burden of Showing that Sellers Waived Their Right to a Time-of-the-Essence Closing.**

Campers Inn cannot meet its burden of proving that the Addendum "clearly establishe[s]" in "[un]equicoval…language" that Sellers intended to waive their right to a time-of-the-essence closing, as New York law requires.  *See Parker Hannifin*, 2013 WL 1932109, at \*7.  As shown above, the Addendum did not explicitly extinguish the "time of the essence" aspect of the closings. So far in this litigation Campers Inn has raised four arguments in its effort to show that Sellers implicitly intended to waive time-of-the-essence in the Addendum.  Each of those arguments fails.

First, Campers Inn argues that the Addendum changed the nature of the parties' agreements because it allowed the two closings to take place on different dates.  But so did the APA and the RPA.  As noted above, under the APA and the RPA, the Asset Closing and the Real Estate Closing were governed by different procedures and requirements, and the parties were free to have those closings on different dates, as long as they occurred "on or before April 15, 2020."  The Addendum's only modification to the closings was to extend their deadlines.  Under New York law, where an initial agreement provides for a time-of-the-essence closing and an amendment extends the closing date without repeating the "time of the essence" phrase, time remains of the

13

essence. *See, e.g., Parker Hannifin*, 2013 WL 1932109 at **2-7, 7-8; *Ward*, 165 A.D.3d at 477–78; *see also Baker Hill*, 130 A.D.3d at 1427.

Second, Campers Inn points to the fact that the phrase "time of the essence" does not appear in the Addendum – but New York law does not require the provision to be repeated in contract amendments. *See, e.g., Parker Hannifin*, 2013 WL 1932109 at **2-7, 7-8; *Ward*, 165 A.D.3d at 477–78.

Third, Campers Inn argues that the Real Estate Closing date in the Addendum cannot be "time of the essence" because the Addendum allows for that closing date to be extended if certain conditions are met. That argument fails. Under New York law, "Courts will enforce time of the essence clauses in contracts that nonetheless grant one or both parties the right to extend or modify the date of closing." *28th Highline*, 2019 WL 917208 at *12; *Sherman*, 41 A.D.3d at 947–48 (applying a general time-of-the-essence provision to the closing date, even though the contract allowed the closing to be extended if certain conditions were met).

Fourth, Campers Inn contends that "time of the essence" cannot apply to either the Real Estate Closing date or the Asset Closing date because the Addendum allows for the possibility of those closings to take place sooner than the specified dates (*i.e.* "on or before" July 31 for the Real Estate Closing, and "on or before" September 30 for the Asset Closing). New York courts have rejected that argument. *E.g., Bardi v. Estate of Morgan*, 61 A.D.3d 625, 625 (N.Y. App. Div. 2009) (holding that a time-of-the-essence provision applied to a closing date expressed as "on or before 9/15/06"; rejecting buyer's argument that the "on or before" language meant that time was not of the essence); *see also 28th Highline*, 2019 WL 917208 at *12 ("Where, as here, a contract sets an "on or before" closing date, but also states that time is of the essence, courts hold that time is of the essence as to the contract's performance on or before that date.").

14

Thus, as a matter of law Campers Inn cannot meet its burden of proving that the Addendum "clearly establishe[s]" in "[un]equicoval…language" that Sellers intended to waive their right to a time-of-the-essence closing.

**II.    IN THE ADDENDUM THE PARTIES AGREED THAT THE ONLY WAY THE REAL ESTATE CLOSING COULD OCCUR AFTER JULY 31, 2020 WAS IF THE SPECIFIC CONDITIONS IN SECTION 3(e) WERE SATISFIED.**

In the Addendum, the parties agreed that the Real Estate Closing must occur "on or before 5:00 p.m. on Friday, July 31, 2020," and that the closing date may be extended <u>only</u> if the specific conditions precedent listed in Section 3(e) were met.  *See* Ex. 9 §§ 2 and 3(e).  Those conditions are the following: (i) if Campers Inn "promptly ordered" the "real estate surveys"; (ii) the surveys were not timely "completed due to no fault of [Campers Inn]"; and (iii) the surveys revealed "title defects."  Upon satisfaction of those three conditions (collectively, the "Survey Conditions"), the Addendum provided that Campers Inn's "period for identification of title defects [is] extended for at least three (3) business days after delivery of the Surveys (and closing is extended accordingly)." *Id*. at § 3(e).[2]

While the evidence shows that Campers Inn met <u>none</u> of the Survey Conditions, Plaintiffs are not moving for summary judgment on that issue, taking the direction from Your Honor at our March 31, 2022 Status Conference that the issue presents questions of fact.

Rather, to narrow the issues for trial, Plaintiffs request that this Court find as a matter of law that the parties' contracts only permitted Campers Inn to complete the Real Estate Closing after July 31, 2020 at 5 p.m. if it satisfied the Survey Conditions.  *See Oppenheimer & Co. v.*

---

[2] Closely related to the Survey Conditions is another set of conditions in Section 3(e) that could have extended the Real Estate Closing – those conditions are not at issue in this case.  Specifically, if Campers Inn promptly and in good faith ordered "all of the approval, surveys, and other required items" set forth in Section 5(c) of the RPA ("Title Commitment, UCC Searches, Municipal Searches, and Survey") and identified those vendors to Sellers, but did not receive those items by July 31, 2020, the Real Estate Closing can be extended.  There is no dispute that by July 31, 2020, Campers Inn had received all such items.

15

*Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 421 (N.Y. 1995) (holding that, where a contract under New York law contains a conditions precedent, that condition must be completely performed before a party has an obligation to tender reciprocal performance).

### III.    THE LAW-OF-THE-CASE DOCTRINE DOES NOT REQUIRE THIS COURT TO IGNORE NEW YORK LAW ON TIME OF THE ESSENCE

Plaintiffs expect Campers Inn to argue that this Court need not interpret the parties' contracts because Judge Tucker has already done so in her denial of Plaintiffs' Motion for Partial Judgment on the Pleadings (the "MJP"). That argument fails.

As the Supreme Court has explained, law of the case is an "amorphous concept" that informs a court's discretion – but does not limit a court's power – to depart from an earlier ruling in the case. *Arizona v. California*, 460 U.S. 605, 618 (1983).

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Law of the case directs a court's discretion, it does not limit the tribunal's power.

*Id.* (citations omitted); *see also Pub. Interest Research Grp. of N.J. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir.1997) (citing *Arizona*). The law-of-the-case doctrine "does not impose a strait-jacket on the court's ability to reconsider issues previously decided… it is not uniformly rigid in its application but rather permits a measure of flexibility and discretion on the part of the successor judge." *United States v. Wecht*, 619 F. Supp. 2d 213, 223 (W.D. Pa. 2009) (quotation omitted).

The law-of-the-case doctrine does not apply unless the specific issue decided by the earlier judge is the same issue being decided by the later judge. *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). Where the "record is unclear" as to whether the issues are the same, law of the case is inapplicable. *See id*. at 1290-91. Further, the law-of-the-case "doctrine does not

16

preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling" of a predecessor judge. *Fagan*, 22 F.3d at 1290.

Even where it is clear that an earlier court unambiguously decided the same issue presented to a later court, the later court may exercise its discretion to revisit the issue and reach a different conclusion. *See, e.g., Arizona*, 460 U.S. at 618; *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 988 F.2d 414, 430 (3d Cir. 1993); *CNA Ins. Grp. v. Nationwide Mut. Ins. Co.*, No. CIV. A. 98-1962, 2000 WL 288241, at *7 (E.D. Pa. Mar. 8, 2000).  Courts in this circuit have articulated three circumstances in which law of the case need not apply:  "Relitigation of a previously decided issue may be appropriate in certain circumstances, including when (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *K.S. v. Sch. Dist. of Philadelphia*, No. CIV.A. 05-4916, 2005 WL 3150253, at *2 (E.D. Pa. Nov. 22, 2005) (Rufe, J.).  These three scenarios are examples – not an exhaustive list – of ways a court can exercise its discretion to revisit an earlier court's ruling. *See, e.g., CNA*, 2000 WL 288241, at *7.

### A.    <u>The MJP Opinion Depends Upon a Standard of Review That Is No Longer Applicable.</u>

Judge Tucker denied the MJP because she accepted as true all of Campers Inn's allegations in its counterclaim, given the standard governing such motions.  Most significantly, the MJP Opinion accepted as true Campers Inn's allegations that it satisfied all three of the Survey Conditions required to extend closing, and therefore the Court ruled that Campers Inn sufficiently pled that it was entitled to extend the closing date. *See* D.E. No. 47 at 15-17.  Over and over in the MJP Opinion Judge Tucker stressed that the decision was based on the sufficiency of Campers Inn's pleadings. *See, e.g. id*. at 15 ("Buyers' Counterclaim pleads enough facts to prove that they did not breach the contract."); *id*. at 18 ("Buyers' Counterclaim pleads enough facts to survive

17

dismissal at this point."); *id*. at 20 ("Sellers' request to dismiss Buyers' Counterclaim is dismissed as Buyers have plead enough facts to survive dismissal.").

Because the MJP Opinion was based on the court accepting as true Campers Inn's allegations in its pleadings, it is not applicable to later stages of the proceedings where the court is no longer required to assume the truth of those allegations. As such, it cannot be considered law of the case.[3]

### B.   An Interpretation of the Addendum as Not Requiring a Time-of-the-Essence Closing Violates New York Law.

The MJP Opinion contains a brief discussion of "time of the essence," which notes that the phrase does not appear in the Addendum, and accepts as true Campers Inn's averment that the parties intentionally chose to omit it from the Addendum because they recognized that the closing date needed to be flexible due to the uncertainties of Covid. D.E. No. 47 at 7, 14, 16-17. Having accepted as true Campers Inn's version of the parties' intent, the MJP Opinion contains the following passage regarding time of the essence:

> this Court agrees with Buyers' argument that attaching "time is of the essence" language to the Addendum would make the contract unworkable. The Addendum's "Additional Delay(s)" provision, § 3(f), allows the Parties a workable and flexible schedule to complete the closing, around the unpredictive nature of the pandemic and government lockdowns. Sellers' argument would impose a strict and rigid schedule to complete the transaction which is simply not applicable under the Addendum's language nor its intent.

*See id*. at 17.

---

[3] Another reason not to accord law-of-the-case status to the MJP Opinion's discussion of time of the essence is because that part of the MJP Opinion is not essential to the decision, and so it is dicta. Dicta does not constitute law of the case. *Coca-Cola*, 988 F.2d at 430; *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co*., No. CIV.A. 05-281, 2011 WL 611802, at *7 (E.D. Pa. Feb. 17, 2011), *aff'd*, 687 F.3d 620 (3d Cir. 2012). The holding of the MJP Opinion, reiterated several times throughout, is that Campers Inn pled sufficient allegations that it satisfied the Survey Conditions and therefore extended the closing date. Given that conclusion, it was unnecessary to discuss whether time was of the essence in the Addendum; that part of the MJP Opinion is therefore dicta.

The analysis in the MJP Opinion is wrong as a matter of law in several respects.  First, it accepted as true Campers Inn's allegation that the parties intentionally dropped "time of the essence" from their agreements because of the uncertainties of Covid, *see* D.E. No. 47 at 7, 14, which influenced the interpretation of the "intent" of the Addendum as providing "a workable and flexible schedule to complete the closing, around the unpredictive nature of the pandemic and government lockdowns."  *See id.* at 17.  In so doing, the Court improperly considered extrinsic evidence of the parties' alleged intent.  *WWW Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("An analysis that begins with consideration of extrinsic evidence of what the parties meant, instead of looking first to what they said and reaching extrinsic evidence only when required to do so because of some identified ambiguity, unnecessarily denigrates the contract and unsettles the law.").  The Addendum does not state that its purpose is to provide any sort of general flexibility due to government lockdowns and the unpredictability of the pandemic.  *See generally* Ex. 9.  Nor is the Addendum ambiguous in any respect regarding the deadlines for closing and the specific conditions precedent that must be met to extend closing.  To the contrary, the Addendum provides that Campers Inn loses its substantial deposit of $750,000 if it misses the Real Estate Closing deadline by a single minute without satisfying the Survey Conditions.  Thus, under New York law, a court may not consider extrinsic evidence of the parties' intent.  *WWW Assocs.*, 566 N.E.2d at 642.

Second, pursuant to New York law, when parties to a contract providing for time of the essence enter into a contract amendment allowing for a later closing date, **time remains of the essence even if that phrase is not repeated in the amendment**.  *See, e.g., Parker Hannifin*, 2013 WL 1932109 at **2-7, 7-8; *Ward*, 165 A.D.3d at 477–78; *Baker Hill*, 130 A.D.3d at 1427.  Here,

19

the Addendum did not need to repeat the time-of-the-essence provision; it remained in effect. *See id.*

Third, the MJP Opinion does not contain the required waiver analysis. Under New York law, in order to find that a party waived its right to insist on a time-of-the-essence closing, the "intent to waive must be clearly established and cannot be inferred from doubtful or equivocal… language." *Parker Hannifin*, 2013 WL 1932109 at *7.

Fourth, the statement in the MJP Opinion that reading time of the essence into the Addendum would render it "unworkable" because the agreement provides a way to extend the closing if certain conditions are met, is wrong as a matter of New York law. New York "[c]ourts will enforce time of the essence clauses in contracts that nonetheless grant one or both parties the right to extend or modify the date of closing." *28th Highline*, 2019 WL 917208 at *12, *aff'd*, 826 F. App'x 70 (2d Cir. 2020); *see also Sherman*, 41 A.D.3d at 947–48 (applying a general time-of-the-essence provision to the closing date, even though the contract allowed the closing to be extended if certain conditions were met).

Fifth, the MJP Opinion's description of Section 3(f) of the Addendum is inaccurate. That section provides that Sellers are entitled to the escrowed deposit funds at 5:01 p.m. on July 31, 2020, or at a later date if the "Closing is postponed to a date past July 31, 2020, **due to title defects as set forth in Section 3(e)**" – in other words, if the closing is postponed because the three Survey Conditions are satisfied. *See* Ex. 9 §§ 3(f) and 3(e). Section 3(f) does not, as the MJP Opinion states, provide an undefined "workable and flexible schedule to complete the closing, around the unpredictive nature of the pandemic and government lockdowns."

This Court should not treat the discussion of time of the essence in the MJP Opinion as law of the case because it is flawed in numerous respects, as shown above. In *CNA v. Nationwide*

*Mutual Insurance Co.*, No. CIV. A. 98-1962, 2000 WL 288241 (E.D. Pa. Mar. 8, 2000), the court was faced with similar circumstances, and held that law of the case did not apply. In that case, in an earlier judge's ruling on a motion for judgment on the pleadings, the court interpreted a contract according to what one party alleged in pleadings was the contract's purpose, but which the later court noted was not expressed in the contract. *Id*. at *7. The later judge "respectfully disagree[d]" with the earlier judge's contract interpretation and therefore declined to apply law of the case. *Id.* Similarly, here, Judge Tucker interpreted the Addendum because she accepted as true Campers Inn's allegation in its pleadings that the parties intentionally omitted time of the essence to allow for the unpredictability of Covid. That alleged intention of the parties is not expressed in the Addendum, and for the reasons set forth above, the interpretation of the Addendum contained in the MJP Opinion is legally flawed in many respects. As in *CNA*, this Court should not apply law of the case, and should instead interpret the parties' agreements in accordance with New York law.

## IV.    CAMPERS INN IS NOT ENTITLED TO SPECIFIC PERFORMANCE

Campers Inn's request for specific performance on its counterclaim cannot be granted as a matter of law for two reasons: (1) BNRV cannot convey title to a property to which it does not hold title; and (2) Campers Inn failed to tender performance, a necessary element of a claim for specific performance.

It is axiomatic that an individual cannot transfer title to a property unless it holds the title to that property. Accordingly, an order for specific performance cannot be entered against a party that does not hold title to a property. *Barnes v. McKellar*, 644 A.2d 770, 776 (Pa. Super. Ct. 1994) (*citing Cohen v. Tonkin*, 57 A.2d 840 (Pa. 1948)) (affirming denial of a claim for specific performance because "[defendant] could not be ordered to convey legal title to the property because he did not hold such title."); *Deckoff v. W. Manning Family Ltd. P'ship*, 193 A.D.3d 812,

21

812 (N.Y. App. Div. 2021) (affirming grant of summary judgment dismissing claim for specific performance where defendant had only a 50% interest in the subject property). Here, it is undisputed that BNRV no longer holds title to either the New York Property or the Pennsylvania Property, having conveyed title to the replacement buyer. Exs. 19, 20. Accordingly, the Court should grant summary judgment on that component of Campers Inn's counterclaim that seeks specific performance.

In the alternative, Campers Inn's specific performance claim fails as a matter of law because it did not tender the purchase price for the properties on July 31, 2020 or at any point thereafter. A party must tender performance to satisfy the requirements of a claim for specific performance under New York law. *#1 Funding Ctr.*, 48 A.D.3d at 909; *see also Cloke v. Findlan*, 165 A.D.3d 1545, 1548 (N.Y. App. Div. 2018) (where a purchaser failed to pay property taxes by time of the essence deadline, it precluded him from obtaining specific performance).

Here, as described in detail above, the parties agreed to a time of the essence deadline of July 31, 2020 to close the real estate transaction, subject to an extension only upon the fulfillment of certain conditions precedent. It is undisputed that, on July 31, 2020, Campers Inn failed to tender the full purchase price, either from its own funds or via its lender. *See* Ex. 6 at 281:24-282:1, 285:9-13, 287:7-13; Ex 15 at 222:22-223:6, 226:4-15. Although Campers Inn asserts (incorrectly) in this litigation that it was entitled to an extension of the closing date, there is no evidence that Campers Inn tendered performance on any extended closing date. *See* Ex. 14. For this additional reason, the Court should enter summary judgment and dismiss Campers Inn's request for specific performance.

## **CONCLUSION**

For the reasons set forth above, BNRV respectfully requests that the Court grant its Motion and enter an order: (1) holding that time was of the essence under the parties' contracts for a July 31, 2020 closing, (2) dismissing that portion of Campers Inn's counterclaim that seeks specific performance, and (3) granting such other and further relief as the Court deems just and proper.

April 28, 2022

KLEHR HARRISON HARVEY
BRANZBURG LLP


By:  */s/Paige M. Willan*
     Paige M. Willan
     William T. Hill
     Stephanie M. Grey
     1835 Market Street, Suite 1400
     Philadelphia, Pennsylvania 19103
     Telephone:  (215) 569-2700
     pwillan@klehr.com
     whill@klehr.com
     sgrey@klehr.com

**CERTIFICATE OF SERVICE**

I, Paige M. Willan, hereby certify that, on April 28, 2022, I caused a true and correct copy of the foregoing Plaintiffs/Counterclaim Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment to be served on the below-listed counsel for Defendants/Counterclaim Plaintiffs Campers Inn Holding Corporation, CI of Hamburg, LLC, and CI of West Coxsackie, LLC via this Court's electronic filing system:

> Blank Rome LLP
> Attn: James T. Smith, William R. Cruse, Danielle Catalan
> One Logan Square
> 130 North 18th Street
> Philadelphia, PA 19103

> */s/ Paige M. Willan*
> Paige M. Willan