**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONOVAN REALTY, LLC,** *et al.* <br><br>         **Plaintiffs/Counterclaim Defendants,** <br><br>     **v.** <br><br> **CAMPERS INN HOLDING CORP.,** *et al.* <br><br>         **Defendants/Counterclaim Plaintiffs.** | **CIVIL ACTION NO. 20-3954** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                 **September 29, 2022**

Nonparties Marcus Lemonis, Brent Moody, and Josh Erickson ("Movants") have moved to quash the subpoenas *duces tecum* issued by Defendants under Rule 45 of the Federal Rules of Civil Procedure.[1] In the alternative, Movants request that the Court enter a protective order under Rule 26(c).[2]

## I. BACKGROUND[3]

The case arises out of a failed transaction for the sale of real estate and recreational vehicle ("RV") dealerships in Hamburg, Pennsylvania and West Coxsackie, New York.[4] Defendants Campers Inn Holding Corporation, CI of Hamburg LLC, and CI of West Coxsackie, LLC (collectively, Campers Inn/Defendants) expressed interest in purchasing the RV sales and

---

[1] Mot. Quash [Doc. No. 37]; Mot. Quash Ex. A–C [Doc. No. 37-1–3].

[2] Mot. Quash [Doc. No. 37].

[3] The Court summarizes the background necessary to the resolution of the Motion to Quash. A more detailed factual and procedural background was laid out in an earlier decision issued by the Honorable Petrese B. Tucker, to whose docket this case was previously assigned. *See Donovan Realty, LLC v. Campers Inn Holding Corp.*, No. 20-3954, 2021 WL 5279870 (E.D. Pa. Nov. 10, 2021).

[4] Compl. [Doc. No. 1] at ¶ 12–13.

service operations and the properties from Plaintiffs Donovan Realty, LLC, DD&A Tilden

Realty, LLC, Zerteck, Inc., Tilden Recreational Vehicles, Inc., and Derwood L. Littlefield

(collectively, the "Littlefield Parties"). The parties entered into agreements that included a "No

Shop" provision requiring Plaintiffs to forgo other offers through closing or termination and to

inform Defendants of other prospective buyers.[5] The transaction did not close for reasons

disputed by the parties, and Plaintiffs subsequently sold the properties and assets to affiliates of

nonparty entity Camping World.[6]

Plaintiffs sued Defendants, who have counterclaimed. As is relevant to the Motion to

Quash, Defendants allege that Plaintiffs engaged in negotiations with Movants concerning the

transaction prior to the closing deadline and that Movants offered Plaintiffs more money for the

properties.[7] Defendants subpoenaed Movants to appear for depositions and produce documents.[8]

Lemonis is the CEO and Chairman of Camping World, Moody is its President, and Erickson is

the Divisional RV President.[9] Movants seek to quash the subpoenas or, in the alternative, a

protective order issued to limit the scope of the subpoenas.[10]

---

[5] The "No Shop" provision required Plaintiffs to (1) forgo other offers through closing or termination, (2) identify any inquiries or offers, and (3) promptly put Buyers on notice, inform them of the identity of the prospective purchaser or soliciting party, and the terms of their proposal. Mem. [Doc. No. 47] at 3.

[6] Mot. Quash [Doc. No. 37] at 8.

[7] Resp. [Doc. No. 42] at 8.

[8] Mot. Quash [Doc. No. 37] at 4. The subpoenas request the production of the following: (1) All documents or communications between the Camping World deponents and Plaintiffs reflecting, referring or relating in any way to Camping World's acquisition of the Properties; (2) All documents or communications between the Camping World deponents and Plaintiffs reflecting, referring or relating in any way to the ongoing litigation between Defendants and Plaintiffs; and (3) All documents or communications between the Camping World deponents and Plaintiffs reflecting, referring or relating in any way to the ongoing dispute between Defendants and Plaintiffs, including, but not limited to, the potential risk or liability related to Camping World's acquisition of the Properties or the Plaintiff's obligation to indemnify Camping World for any lost associated with Camping World's acquisition of the Properties. Mot. Quash Ex. A–C [Doc. No. 37-1–3].

[9] Resp. [Doc. No. 42] at 9.

[10] Mot. Quash [Doc. No. 37].

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 45 the Court may "quash or modify a subpoena that … subjects a person to undue burden."[11] "A subpoena served during discovery must fall within the scope of discovery set forth in Federal Rule of Civil Procedure 26(b)(1)."[12] Rule 26(b)(1) permits discovery "regarding any [relevant] nonprivileged matter" and allows the Court to take into consideration the importance of the issues and proposed discovery, as well as the parties' resources, access to information, and the burden of the discovery relative to its benefit.[13] The Court may limit discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."[14] "When assessing the parties respective positions, the court is required to balance several competing factors: (1) relevance, (2) need, (3) confidentiality, and (4) harm."[15] As non-parties to this litigation, Movants are afforded "greater protection from discovery than a normal party."[16]

## III.    DISCUSSION

Movants offer several reasons for quashing or limiting the scope the subpoenas: (1) the subpoenas are unduly burdensome; (2) the subpoenas improperly seek privileged documents, and (3) Lemonis should not be deposed under the apex doctrine.

---

[11] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[12] *Siroky v. Allegheny Cnty.*, No. 15-1170, 2018 WL 1465759, at *2 (W.D. Pa. Mar. 26, 2018); Fed. R. Civ. P. 26(b)(1).

[13] Fed. R. Civ. P. 26(b)(1).

[14] Fed. R. Civ. P. 26(b)(2)(C)(i).

[15] *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (internal quotation marks and citation omitted).

[16] *Kelley v. Enhanced Recovery Co., LLC*, 2016 WL 8673055, at *2 (D.N.J. Oct. 7, 2016) (citations omitted).

A.  Undue Burden

Movants move to quash the subpoenas as overly broad, unduly burdensome, and as harassment against deponents affiliated with Camping World.[17] In deciding whether to quash a subpoena for being unduly burdensome, the Court may look to factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[18] Movants argue that the subpoenas are unduly burdensome because they request information not relevant or proportional to the needs of the case, and that the requests are overly broad and seek privileged communications.[19] Finally, Movants argue the subpoenas "represent an end-run around the pending litigation in the Court of Common Pleas."[20]

B.  Relevance

Movants argue the documents and testimony are not relevant to Defendants' defenses or counterclaims.[21] Movants contend that Camping World has already provided sufficient information regarding its initial dealings with Plaintiff, and that "[a]ny additional communications … have no bearing on the question of why Campers Inn failed to close its transaction with Plaintiffs or whether the parties to this action complied with their obligations under the contract between them."[22] According to Movants, the documents regarding the present litigation lack any probative value because the litigation did not begin until after the transaction

---

[17] Mot. Quash [Doc. No. 37] 2–3.

[18] *In re Auto. Refinishing Paint*, 229 F.R.D. 482, 495 (E.D. Pa. 2005) (quotation marks and citation omitted).

[19] Mot. Quash [Doc. No. 37] at 8.

[20] Mot. Quash [Doc. No. 37] at 8.

[21] Mot. Quash [Doc. No. 37] at 12–13.

[22] Mot. Quash [Doc. No. 37] at 13–14.

failed, and "the documents concerning 'potential risk or liability' and any obligation of Plaintiffs to indemnify Camping World" are similarly irrelevant.[23]

Typically, "discovery requests should be granted, if there is any possibility that the information sought may be relevant to the general subject matter of the action[,]" and it is the burden of the moving party to show the request's relevance.[24] The crux of Defendants' counterclaims and defenses relies on an alleged breach of contract by Plaintiffs where Defendants argue Plaintiffs negotiated the sale to Movants prior to the closing of their agreements, in violation of its "No Shop" provision.[25] In an effort to prove this claim, Defendants seek the deposition of three executives of Campers World, alleging they "enticed the Littlefield Parties into breaching several provisions of the Agreements."[26] Similarly, the documents requesting all documents or communications between Movants and Plaintiffs regarding Camping World's acquisition of the properties is relevant where Defendants allege Plaintiffs breached their agreements "by soliciting, discussing, and negotiating the sale" to Camping World.[27]

The subpoenas also request documents and communications between the Camping World deponents and Plaintiffs regarding the ongoing litigation between Defendants and Plaintiffs in the present case, as well as those relating to the risks and liability of Plaintiffs'

---

[23] Mot. Quash [Doc. No. 37] at 14.

[24] *Int'l Paper Co. v. Rexam, Inc.*, No. 11-6494, 2013 WL 3043638, at *3 (D.N.J. June 17, 2013) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

[25] Resp. [Doc. No. 42] at 8; Defs.' Countercl. [Doc. No. 8] at ¶¶ 57–58. In addition, Defendants' counterclaims and defenses rely on facts surrounding the alleged agreement between the parties that "time was not of the essence and therefore the parties' failure to close on July 31, 2020 was not detrimental to the Agreements" and that Defendants properly notified Plaintiff regarding "certain defects in the title to the Properties, which triggered the three-day extension of the closing date pursuant to Section 3(e) of the Addendum." Resp. [Doc. No. 42] at 17.

[26] Resp. [Doc. No. 42] at 17.

[27] Resp. [Doc. No. 42] at 17.

transaction with Camping World. Central to the present dispute is the issue of whether Plaintiffs breached their contract with Defendants, including the role Movants played in the alleged breach. Therefore, the documents are relevant to the subject matter of Camping World's acquisition of the properties.

### C.   Apex Doctrine

Movants also argue the subpoena to Lemonis should be quashed under the apex doctrine.[28] The Court has "significant discretion when resolving discovery disputes" and may quash a subpoena in order "to prevent oppressive, harassing, inconvenient, and burdensome depositions of executive officials."[29] "[P]arties to be deposed must have personal knowledge or the request to depose does not conform to [Rule 26]."[30] Under the apex doctrine, the Court evaluates "two factors when deciding if the deposition of a high-ranking … executive is appropriate: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods."[31] However, courts in the Third Circuit have found the apex doctrine inapplicable when an executive has personal knowledge of the subject matter.[32]

Defendants argue that they should be permitted to depose Lemonis, alleging he "personally enticed the Littlefield Parties to breach the [a]greements and negotiated the terms of

---

[28] Mot. Quash [Doc. No. 37] at 8–12.

[29] *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-843, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012) (citing *Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 778 (3d Cir. 2000)).

[30] *Id.* at *3.

[31] *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 2:13-MD-02436, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014) (citations omitted).

[32] *See, e.g., Pegley v. Roles*, No. 17-732, 2018 WL 572093, at *3 (W.D. Pa. Jan. 26, 2018); *In re Tylenol (Acetaminophen) Mktg.*, 2014 WL 3035791, at *2–3.

the agreement between Camping World and the Littlefield Parties."[33] Defendants argue Lemonis exchanged conversations with Littlefield regarding Plaintiffs' liability and "when Mr. Littlefield raised the possibility of Campers Inn seeking an injunction to prevent the transfer of the properties and business assets to Camping World, Mr. Lemonis responded stating, 'Let's get it signed and we can fight the injunction together [.]'"[34] In addition, Littlefield was deposed by Defendants on December 20 and 21, 2021.[35] During this deposition, Littlefield could not provide substantive details about the several discussions he independently had with Lemonis.[36] Defendants argue this makes the need to depose Lemonis even more compelling.[37] Defendants do not have any means other than Lemonis's deposition to acquire an accurate recollection of the details of conversations between Littlefield and Lemonis. Defendants have made an adequate showing that Lemonis appears to have unique knowledge about the transaction that could not be obtained in a less burdensome way.

     D.  <u>Overbreadth</u>

Movants also argue Defendants' requests are overly broad and not described with particularity.[38] Movants suggest "the requests should be limited to the period immediately before and including Campers Inn's failure to close."[39] The subpoenas ask only for communications in which the Movants personally participated in with Plaintiffs, on topics limited to the subject matter at hand. Therefore, it is unlikely that these documents and communications encompass

---

[33] Resp. [Doc. No. 42] at ECF page 13.

[34] Resp. [Doc. No. 42] at ECF page 14.

[35] Suppl. Opp'n Mot. Quash [Doc. No. 57] at 2.

[36] Suppl. Opp'n Mot. Quash [Doc. No. 57] at 2–3.

[37] Suppl. Opp'n Mot. Quash [Doc. No. 57] at 4.

[38] Mot. Quash [Doc. No. 37] at 15.

[39] Mot. Quash [Doc. No. 37] at 15.

information outside of Camping World's acquisition of the properties, the current litigation, and/or the assessment of Camping World's risks and liability of the transaction." Because the question of whether the agreements are still in effect is at issue, it would be improper for the Court to limit the documents request to the period leading up to July 31, 2020, and no later.

Movants contend the requests "encompass documents having nothing to do with the claims or defenses in this litigation."[40] They further argue that the documents "are duplicative because the second and third requests deal with this litigation and the 'ongoing dispute' between the Plaintiffs and Campers Inn" which, according to Movants, "are [now] effectively one and the same."[41] While the subpoenas may yield some duplicative documents, they may likely also produce new information on the potential risks and liability of Plaintiff's alleged breach of their agreements. Accordingly, the subpoenas are not so overly broad to warrant the restriction.[42]

E.  Privileged Communications

Next, Movants argue the subpoenas should be quashed because they seek privileged communications under the common interest doctrine and the work product doctrine.[43] "A party claiming work-product immunity bears the burden of showing that the materials in question were prepared in the course of preparation for possible litigation."[44] The common interest doctrine requires "the clients [to] be parties to litigation or involved in similar or related legal proceedings

---

[40] Mot. Quash [Doc. No. 37] at 15.

[41] Mot. Quash [Doc. No. 37] at 15.

[42] *See Temple Univ. v. Salla Bros.*, 656 F. Supp. 97, 111 (E.D. Pa. 1986) (allowing production of documents where "the plaintiff has designated in each request the subject of the documents sought and the people to whom the requested documents refer.").

[43] Mot. Quash [Doc. No. 37] at 17–18.

[44] *E.E.O.C. v. Guess?, Inc.*, 176 F. Supp. 2d 416, 423 (E.D. Pa. 2001) (citations omitted).

that implicate essentially the same interest against a common adversary."[45] However, "claims of attorney-client privilege must be asserted document by document," in contrast to blanket or conclusory assertions of privilege.[46] Although some documents may later prove to be protected under either doctrine, Movants have not precisely described the nature of the documents or communications that would enable this Court to assess the applicability of the work product doctrine or common interest doctrine.[47] Without substantiation of the privilege claims, the subpoenas will not be quashed on these grounds.[48]

### F.   Circumventing State Court Action

Finally, Movants argue Defendants' "implicit purpose for serving these subpoenas is to obtain discovery to use against Camping World in the pending state court matter and circumvent the discovery process there."[49] The Court notes that the state-court action now has been stayed pending the outcome of the present litigation.[50]

### G. Protective Order

In the alternative, Movants request that the Court issue a protective order pursuant to Rule 26(c).[51] Movants bear the burden of proving that the requested materials are protected from

---

[45] *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 284 (W.D. Pa. 2014) (citing *In re Condemnation by City of Phila. in 16.2626 Acre Area*, 981 A.2d 391, 397 (Pa. Commw. Ct. 2009)).

[46] *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (citations omitted); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 246 (W.D. Pa. 2007) (citation omitted).

[47] *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information … by claiming [privilege] … the party must … describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that … will enable other parties to assess the claim.").

[48] *See Stokes v. Cenveo Corp.*, No. 16-886, 2017 WL 3648327, at *3 (W.D. Pa. Aug. 24, 2017).

[49] Mot. Quash [Doc. No. 37] at 16.

[50] *See Campers Inn Holding Corp. v. Camping World Holdings*, No. 210601138 (Phila. C.C.P. June 30, 2022).

[51] Mot. Quash [Doc. No. 37].

discovery as a matter of law.[52] Movants must support their claim of privilege "with 'a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.'"[53] As discussed in detail above, the Movants have not met their burden to establish privilege or undue burden. With regard to the common interest doctrine or work product doctrine, the Court cannot make that determination on the current record, and therefore the motion is denied without prejudice.

## IV.  CONCLUSION

Movants have failed to establish that the documents and communications requested by Defendants will impose undue hardship or are privileged communications exempt from production. An appropriate order will be entered.

---

[52] *Stokes*, 2017 WL 3648327, at *2 (citing *United States v. Kossak*, 275 F. Supp.2d 525, 533 (D. Del. 2003) (and then citing *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992)).

[53] *Id.* (citing Fed. R. Civ. P. 45(d)(2))*; see also* Fed. R. Civ. P. 26(b)(5).