**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **DONOVAN REALTY, LLC,** *et al.* | |
| **Plaintiffs/Counterclaim Defendants,** | **CIVIL ACTION NO. 20-3954** |
| **v.** | |
| **CAMPERS INN HOLDING CORP.,** *et al.* | |
| **Defendants/Counterclaim Plaintiffs.** | |

---

## <u>MEMORANDUM OPINION</u>

Rufe, J.                                                                                                    **March 28, 2023**

The case arises out of a failed transaction for the sale of real estate and recreational vehicle ("RV") dealerships: the "Boat N RV Superstore" in Hamburg, Pennsylvania and the "Boat N RV Warehouse" in West Coxsackie, New York. Plaintiffs/Counterclaim Defendants Donovan Realty, LLC, DD&A Tilden Realty, LLC, Zerteck, Inc., Tilden Recreational Vehicles, Inc., and Derwood L. Littlefield (collectively, "BNRV") agreed to sell the RV sales and service operations and the land to Defendants/Counterclaim Plaintiffs Campers Inn Holding Corporation, CI of Hamburg LLC, and CI of West Coxsackie, LLC (collectively, "Campers Inn").[1] The transactions did not close and BNRV then sold the properties and dealerships to non-party Camping World Holdings, Inc. and associated entities.

BNRV filed this lawsuit on August 13, 2020, asserting claims for breach of contract (Count I) seeking damages including the $750,000 deposit and damages, including counsel fees; a declaratory judgment that because the real estate transaction did not close by July 31, 2022, the

---

[1] Different entities were involved as to each property but the parties generally refer to the collective groups.

parties' agreements terminated, entitling BNRV to the deposit (Count II); and, in the alternative, promissory estoppel based on BNRV's reliance on promises made by Campers Inn (Count III).[2]

On August 25, 2020, Campers Inn answered the Complaint and asserted a Counterclaim for breach of contract, seeking damages and an injunction ordering specific performance.[3] Campers Inn also filed a motion for a preliminary injunction[4] and a notice of *lis pendens*.[5] By Memorandum and Order dated November 10, 2021, the Honorable Petrese Tucker, to whom this case was then assigned, denied a motion for partial judgment on the pleadings and also denied the motion for preliminary injunction as moot because the properties had been sold.[6] On October 9, 2020, BNRV closed the sale of the dealerships and real estate to non-party Camping World and no longer holds title to the properties.[7]

Campers Inn moves for summary judgment on BNRV's claims and on Campers Inn's counterclaims for breach of contract, and seeks a permanent injunction ordering specific performance.[8] BNRV seeks partial summary judgment on the question of whether Campers Inn

---

[2] *See generally* Compl. [Doc. No. 1].

[3] Campers Inn Ans. & Countercl. [Doc. No. 8].

[4] Campers Inn sought an order directing BNVR to "[c]ease and desist all efforts to solicit, discuss, and/or negotiate the transfer or sale of their recreational vehicle businesses and accompanying real estate to any other party other than [Campers Inn]; and "[s]pecifically perform their contractual obligations under the [parties' agreements], as amended by the Addendum, to convey to [Campers Inn] the subject properties." Campers Inn Mot. Prelim. Inj. Proposed Order [Doc. No. 9-2] at 3.

[5] Campers Inn Notice *Lis Pendens* [Doc. No. 11]. The purpose of a notice of *lis pendens* is to "to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit must be subject to the outcome of the litigation." Bryan A. Garner, *A Dictionary of Modern Legal Usage* at 530 (2d ed. 1995)..

[6] Mem. Op. & Order Nov. 10, 2021 [Doc. Nos. 47, 48].

[7] The Memorandum noted that the circumstances did not "foreclose the Court's ability to unwind the alleged sale, if it [is] later determined that Sellers violated the terms of their contract." Mem. Op. Nov. 10, 2021 [Doc. No. 47] at 1 n.3. The case was reassigned to the docket of this Court on March 15, 2022. Order Mar. 15, 2022 [Doc. No. 61].

[8] Campers Inn Mot. Summ. J. [Doc. No. 67].

was required to close its purchase by July 31, 2020, unless it satisfied conditions to extend the deadline, and on the demand for specific performance because BNRV no longer holds title to the properties and Campers Inn never tendered performance.[9] Because factual disputes render the case ill-suited to resolution on summary judgment, the motions will be denied.

## I.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[11]

The court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[12] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[13] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[14] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[15] If, after making all reasonable

---

[9] BNRV Mot. Partial Summ. J. [Doc. No. 75].

[10] Fed. R. Civ. P. 56(a).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[13] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citations omitted).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[16]

"The rule is no different where there are cross-motions for summary judgment."[17] As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."[18]

## II.   DISCUSSION

### A. The Transactions

Although the parties disagree on many facts as to why the sale was not consummated, the basic contours of the transaction are set forth in the relevant documents. On February 4, 2020, the parties entered into an asset purchase agreement (the "APA") governing the sale of the dealership assets, and an agreement for the purchase and sale of the real estate and related property (the "RPA"). The agreements provide that they are governed by New York law.[19] The agreements included a "no shop" provision under which BNRV agreed not to directly or indirectly "consider, discuss or negotiate with, or solicit, initiate or encourage the transfer or sale" of the dealerships and land and to notify Campers Inn of any offers received.[20] The APA

---

[16] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[17] *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

[18] *Id.* (internal quotation and citation omitted).

[19] Compl. Ex. A ("APA") § 10.5 [Doc. No. 1] at ECF page 22; Compl. Ex. B ("RPA") § 15(b) [Doc. No. 1] at ECF page 59.

[20] APA § 4.3 [Doc. No. 1] at ECF page 30.

also provided that if BNRV was ready, willing, and able to consummate the transactions but Camping Inn failed to do so, then the deposit would be retained by BNRV as liquidated damages and the APA would be "null and void and neither party shall have any rights or obligations under" the APA.[21] The closing was set for April 15, 2020, and the parties agreed that time was of the essence.[22] The parties had due diligence obligations under the Agreements, including that BNRV would deliver in its possession surveys, the title insurance policy, and similar documents.[23] BNRV also agreed to convey at closing "marketable fee simple title of record to the Land and Improvements to [Campers Inn] by a recordable warranty deed…in a form reasonably acceptable to [Campers Inn] and the Title Insurer…"[24] BNRV further agreed to produce "additional instruments of transfer, conveyance and assignment" reasonably

---

[21] APA § 9.2 [Doc. No. 1] at ECF page 40.

[22] APA § 7.1 [Doc. No. 1] at ECF page 35.

[23] Under the RPA, BNRV agreed to produce:

  (a) copies of any existing surveys prepared by any survey or engineering company, if any, as well as any of the most recent title insurance policy or commitment for title insurance with respect to the Property;

  (b) all existing soil reports, boundary and/or improvement surveys, and other similar materials relating to the Property; together with all physical inspection, engineering, and test reports, including, but not limited to environmental reports, and written investigations or assessments with respect thereto;

  (c) copies of any unrecorded agreements made by Seller relating to the Property which will survive the Closing under this Agreement, and any current notices which Seller has received from any governmental entities regarding the Property;

  (d) a copy of the most recent appraisal of the Property;

  (e) any pertinent available plans, drawings[,] or specifications with respect to the improvements which are currently located on the Property; and

  (f) any other items deemed reasonably necessary by Buyer to conduct inspection….

RPA§ 4 [Doc. No. 1] at ECF page 49.

[24] RPA § 5(d) [Doc. No. 1] at ECF page 51.

requested by Campers Inn.[25]

The APA provided that "all conditions precedent to [Campers Inn's] performance shall be deemed satisfied in the event [Campers Inn] authorizes any public announcement of the Transactions by [BNRV's agent] or by the commencement of any operations by [Campers Inn] at the Properties, including operations utilizing [BNRV's] employees."[26] The parties announced the transaction on March 9, 2023.[27] The parties agreed that the "Agreement may be terminated at any time . . . by any Party if the Closing shall not have occurred by April 15, 2020, and the Party seeking termination is ready, willing and able to close and not in material default of its obligations under this Agreement. . . ."[28] The parties also agreed that in the event of a breach, the non-breaching party would be "authorized to demand specific performance" of the APA and RPA and entitled to "permanent injunctive relief."[29]

As with so many aspects of life, the COVID-19 pandemic upended the parties' plans and on April 24, 2020, the parties executed the Addendum, which modified the APA and RPA "to the extent necessary" to move the closing dates to "on or before" July 31, 2020 at 5:00 p.m. for the real estate transactions and "no later than" September 30, 2020, for the dealership assets.[30] Campers Inn agreed to deposit $750,000 into escrow, and the parties agreed in the Addendum that:

> [Campers Inn] shall execute a letter of instruction to the Escrow Agent in a form
> suitable to [BNRV] which shall remain in the possession of [BNRV] until the

---

[25] APA § 4.16 [Doc. No. 1] at ECF page 32.

[26] APA § 6.1 [Doc. No. 1] at ECF page 34.

[27] BNRV Ex. 8 [Doc. No. 75-3] at ECF page 94.

[28] APA § 9.1(c) [Doc. No. 1] at ECF page 40.

[29] APA § 10.7 [Doc. No. 1] at ECF page 41.

[30] Addendum § 2 [Doc. No. 75-3] at ECF page 127.

later of: (a) 5:01 p.m. on July 31, 2020, or (b) if the Closing is postponed to a date
past July 31, 2020, due to title defects as set forth in Section 3(e) until such title
defects are cured, then promptly upon such title defects being cured, at which
time [BNRV] may release the letter of instruction to the Escrow Agent directing
Escrow Agent to release the Entire Deposit to [BNRV].[31]

The transaction did not close on July 31, 2020, and as discussed below, the parties blame

each other.

### B. Breach of Contract

1. <u>BNRV's Motion for Partial Summary Judgment on Time of the Essence</u>

BNRV maintains that the parties agreed that time was of the essence in the transaction,

and that Campers Inn's failure to close constituted a default that terminated any obligation by

BNRV to close. Campers Inn argues that the "time is of the essence" language in the APA was

omitted from, and therefore did not carry forward to, the Addendum and that the earlier decision

denying the motion for partial judgment on the pleadings constitutes the law of the case.[32]

---

[31] Addendum § 3(f) [Doc. No. 75-3] at ECF page 129. Section 3(e) stated that "Section 5(c) (Title Defects)
will be modified to extend the period to identify title defects from the end of the Inspection Period to (10) [*sic*] days
prior to Real Estate Closing; except that if real estate surveys are promptly ordered, but not completed due to no
fault of buyer, period for identification of title defects [is] extended for at least three (3) business days after delivery
of the Surveys (and closing is extended accordingly)." Addendum § 3(e) [Doc. No. 75-3] at ECF page 128-29.

[32] In denying the motion for partial judgment on the pleadings Judge Tucker held that:

[T]his Court agrees with Buyers' argument that attaching "time is of the essence" language to the
Addendum would make the contract unworkable. The Addendum's "Additional Delay(s)"
provision, § 3(f), allows the Parties a workable and flexible schedule to complete the closing,
around the unpredictive nature of the pandemic and government lockdowns. Sellers' argument
would impose a strict and rigid schedule to complete the transaction which is simply not
applicable under the Addendum's language nor its intent. *See Ronnen v. Ajax Elec. Motor Corp.*,
671 N.E.2d 534, 536 (N.Y. 1996) ("We have long and consistently ruled against any construction
which would render a contractual provision meaningless or without force or effect").

Finally, Sellers were not allowed to terminate the transaction. As stated above, the Addendum
provided an Additional Delay provision. Buyers invoked this provision which foreclosed Sellers'
ability to terminate the contract. Buyers attempted to cure the title defects as was required under
the Addendum, but Sellers attempted to have the escrow agent release the funds. Thus, because
Buyers did not materially breach the contract, based on their pleadings, and because "time is of the
essence" was not included in the Addendum, Sellers are not entitled to Declaratory Judgment.

Mem. Op. Nov. 21, 2021 [Doc. No. 47] at 17.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[33] "But that doctrine does not prevent a court from deciding a summary judgment motion based on record evidence in a way that differs from previous decisions that were based on allegations in the complaint."[34] The earlier ruling considered the facts alleged in the pleadings, including that the parties sought a workable and flexible schedule to complete the closing because of pandemic-related uncertainties, and that title defects allowed the parties to move the closing date. As the Court now has record evidence to consider, and not the allegations of the Complaint, it is not constrained by the law of the case doctrine.[35]

In interpreting a contract under New York law,

> [w]hen parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms, and this rule is applied with special force in the context of real property transactions, where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length. Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.[36]

When the contract is clear on its face, it involves only a question of law, but "where the meaning of the words is ambiguous or the sense in which the words are used or what the

---

[33] *ACLU, et al. v. Mukasey*, 534 F.3d 181, 188 (3d Cir. 2008). When the law of the case doctrine applies, decisions may be reconsidered when "extraordinary circumstances" are present, including: (1) an intervening change in the law; (2) new evidence; or (3) reconsideration is necessary to prevent clear error or a manifest injustice. *Id.*

[34] *Mack v. Yost*, No. 21-2472, 2023 WL 2579491, at *13 (3d Cir. Mar. 21, 2023).

[35] Mem. Op. Nov. 10, 2021 [Doc. No. 47] at 17. The discussion of New York law was also dicta as it was not necessary to the resolution of the motion for judgment on the pleadings. *See United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 397 n.4 (3d Cir. 2003) (holding that dicta is not subject to the law of the case doctrine).

[36] *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 403-04 (N.Y. 2009) (internal quotation marks and citations omitted).

promisee reasonably believed the words to mean is ambiguous, there is a question for a jury."[37] Here, both sides argue that the transaction documents are unambiguous, even though they reach different interpretations and present extrinsic evidence, which "is admissible only if a court finds an ambiguity in a contract."[38] "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties intent, or when specific language is susceptible of two reasonable interpretations."[39] The Court concludes that there is an ambiguity as to whether the Addendum incorporated the time of the essence clause. Campers Inn argues that it affirmatively struck a "time being of the essence clause" from the Addendum because "such rigidity was not reasonable given the ongoing COVID-19 pandemic," and that there was no reason for the hard deadline and no harm from a brief delay.[40] BNRV argues that those involved in the transaction understood that July 31, 2020, was the end date for the real estate closing.[41] BNRV also cites the terms of the Addendum providing that (1) if the closing did not occur by 5:00 p.m. on July 31, 2020, then BNRV was entitled to the deposit money at 5:01 p.m., unless the closing was postponed due to certain title defects and (2) that the Addendum incorporated the terms of the APA except as otherwise provided.[42] However, as noted, the closing date had an exception for

---

[37] *Citizens Cent. Bank, a Div. of Cent. Tr. Co. v. Fisher*, 126 A.D. 2d 968, 969, 511 N.Y.S.2d 743, 743 (N.Y. App. Div. 4th Dep't 1987).

[38] *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013)

[39] *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022) (citation omitted).

[40] Campers Inn Mem. Opp. BNRV Mot. Part. Summ. J. [Doc. No. 83] at 1-2.

[41] BNRV Reply Mem. Supp. BNRV Mot. Part. Summ. J. [Doc. No. 89] at 4 n.5 (summarizing testimony).

[42] *See Parker Hannifin Corp. v. N. Sound Properties*, No. 10-6359, 2013 WL 1932109, at *2 (S.D.N.Y. May 8, 2013) (holding that when a subsequent document incorporated the terms of a prior document, that included a time is of the essence clause). In addition, under New York law, "[c]ourts will enforce time of the essence clauses in contracts that nonetheless grant one or both parties the right to extend or modify the date of closing." *28th Highline Assocs., L.L.C. v. Roache*, No. 18-1468, 2019 WL 917208, at *12 (S.D.N.Y. Feb. 25, 2019), *aff'd*, 826 F. App'x 70 (2d Cir. 2020).

title defects, and the language incorporating the APA into the Addendum is not as clear as

BNRV represents. Under the Addendum, "[i]n the event of any contradiction between the terms

of this Addendum and the Transaction Documents, as defined in the APA, the terms of this

Addendum shall control. Except as modified herein, all terms of the Transaction Documents, as

defined in the APA, shall remain in effect."[43] The APA defines the "Transaction Documents" as

"all documents or other material required to be delivered by [BNRV] pursuant to this

Agreement."[44] The Court cannot rule as a matter of law whether the parties incorporated the time

is of the essence clause into the Addendum [45]and whether, if so, the parties agreed to waive the

provision.[46] The motion for partial summary judgment will be denied.

> 2. Campers Inn's Motion on Breach of Contract

Campers Inn argues that the facts establish that BNRV materially breached the

transaction agreements and that Campers Inn performed its obligations. To obtain a judgment for

breach of contract under New York law, a plaintiff must establish that "(1) a contract exists; (2)

plaintiff performed in accordance with the contract; [and] (3) defendant breached its contractual

obligations."[47] A material breach by one party excuses the nonbreaching party from further

performance.[48] To be material, a breach must go to the root of the parties' agreement.[49]

---

[43] Addendum § 4 [Doc. No. 75-3] at ECF page 129.

[44] APA § 7.2(a)(iii) [Doc. No. 1] at ECF page 35.

[45] *See 28th Highline Assocs.*, 2019 WL 917208 at *12 (citing *Sherman v. Real Source Charities, Inc.*, 41 A.D.3d 946, 947-48 (3d Dep't 2007)). )

[46] *See Bardi v. Estate of Morgan*, 877 N.Y.S. 2d 142, 142 (N.Y. App. 2d Dep't 2009).

[47] *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (2022) (internal citations omitted).

[48] *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) (applying New York law).

[49] *Id*. (citations omitted).

Campers Inn argues first that BNRV refused to tender its closing documents on July 31, 2020, including signed deeds, bills of sale, and related documents and that it had no excuse for doing so, and failed to correct title defects. Second, Campers Inn argues that BNRV breached the confidentiality provisions of the APA by disclosing confidential information to Camping World and others.[50] Third, Campers Inn argues that BNRV violated the no-shop provisions of the agreements. Factual disputes preclude granting summary judgment on any of these issues.

Campers Inn argues that BNRV failed to tender original (as opposed to faxed or scanned) signed copies of its closing documents, including deeds and bills of sale, to the title insurer to be held in escrow by July 31, 2020.[51] However, Campers Inn acknowledges that BNRV's president was signing documents at least up until 2:00 p.m., when a wire transfer deadline set by M&T Bank (which was providing financing to Campers Inn) halted the proceedings.[52] BNRV argues that neither Campers Inn nor M&T Bank tendered the funds on the closing date,[53] but Campers Inn argues it had paid the equity portion of the purchase price payment and that M&T Bank remained committed to funding the loan by the next week.[54] BNRV argues that Campers Inn had demonstrated a failure to complete its diligence obligations even before the government-mandated shutdowns in mid-March of 2020,[55] and that when Campers Inn failed to meet the amended deadline of July 31, 2020, BNRV moved on to another buyer. BNRV maintains that

---

[50] APA §§ 4.2, 4.3 [Doc. No. 1] at ECF page 30.

[51] Campers Inn's Mem. Supp. Summ. J. [Doc. No. 67] at 16.

[52] Campers Inn's Mem. Supp. Summ J. [Doc. No. 67] at 17-18.

[53] BNRV argues that Campers Inn had sufficient funds to close the transaction without the loan from M&T but made no effort to do so. BNRV Mem. Supp. Summ. J. [Doc. No. 75] at 7.

[54] Campers Inn's Mem. Supp. Summ. J. [Doc. No. 67] at 19.

[55] *See* BNRV Mem. Supp. Partial Summ. J. [Doc. No. 75-1] at 3-4.

Campers Inn's own broker agrees that there was "nothing BNRV could have done to enable M&T to fund the transaction on July 31, 2020."[56] All of this evidence (and the Court has not cited every exhibit in the voluminous filings) requires a factfinder to evaluate what happened and why.

Similarly, the evidence of record is conflicting as to when BNRV communicated with Camping World, and what information was shared.[57] There is evidence that the principal of BNRV did not reach out to Camping World until August 1, 2020, the day after the "deal blew up . . . at the closing table."[58] Other evidence, laid out in a chart prepared by Campers Inn, as to the communications between Camping World and BNRV suggests that there may have been overtures before July 31, 2020, but the evidence is opaque at best and requires the drawing of inferences to conclude that violations of the no-shop clause or confidentiality provisions occurred.[59] The inferences may be plausible, but these are matters of assessing credibility and interpreting evidence that fall squarely within the purview of a factfinder. Summary judgment will be denied.

### 3.   Cross-Motions on Specific Performance

Both parties seek summary judgment on Campers Inn's claim for a permanent injunction ordering specific performance. Campers Inn argues that it was ready, willing, and able to complete the transaction and that the parties agreed that specific performance was a proper remedy. BNRV argues that specific performance cannot be ordered in this case because the

---

[56] BNRV Mem. Supp. Partial Summ. J. [Doc. No. 75-1] at 7 n.1.

[57] The parties supplemented the summary judgment record after the Court denied a motion to quash deposition notices directed to executives of Camping World *See* Doc. Nos. 95, 99

[58] Ex. D-119 at CW-003927 [Doc. No. 105-1] at ECF page 98.

[59] Ex. D-104A [Doc. No. 105-1] at ECF pages 38-39.

properties have been sold to non-party Camping World. In the alternative, BNRV argues that Campers Inn failed to tender the full purchase price for the properties on July 31, 2020 or afterward, and therefore specific performance cannot be ordered.

As specific performance is an equitable remedy, and one of the properties is located in Pennsylvania, the parties cite both New York and Pennsylvania law, which appear generally consistent. To obtain specific performance, Campers Inn must "show that it was ready, willing and able to fulfill its contractual obligations."[60] Moreover, "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition."[61] It is not clear whether specific performance can be ordered where the property has been sold and the buyer is not a party to the litigation.[62] Campers Inn argues that although an injunction "will not be binding on Camping World as a 'party' to this action, Camping World would still be subject to the Court's order as a later bad faith purchaser" and subject to contempt "should it act in active concert or participate with BNRV in defiance of this Court's injunction."[63] The Court defers decision on these thorny issues because even if specific performance is available, there are factual disputes as to whether Campers Inn was ready to complete the transaction on July 31, 2020 (or shortly thereafter if time was not of the essence) and whether BNRV was responsible for any delay.[64]

---

[60] *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513, 516-17 (N.Y. 2006) (citations omitted).

[61] *Id.* at 517 (quoting *Kooleraire Serv. & Installation Corp. v. Board of Educ. of City of N.Y.*, 268 N.E.2d 782, 784 (N.Y. 1971)) (internal quotation marks and alteration omitted).

[62] *See Tri-Outdoor, Inc. v. Keyser*, No. 2053 EDA 2021, 2022 WL 1132907, at *3 (Pa. Super. Ct. 2022 Apr. 18, 2022) (holding that the seller "no longer owns the Property, so he cannot transfer the Property's title to [the plaintiff]. As a matter of basic property law, [the seller] cannot specifically perform this contract.").

[63] Campers Inn's Reply Mem. Supp. Summ J. [Doc. No. 92] at 15.

[64] The fact that the properties have been conveyed to Camping World does not render specific performance impossible. *See Morrocoy Marina, Inc. v. Altengarten*, 120 A.D.2d 500, 500 (N.Y. App. Div. 2nd Dep't. 1986) (citations omitted) (holding that "to have bona fide purchaser status so as to preclude an award of specific

### III.    CONCLUSION

For the reasons stated above, the motions for summary judgment will be denied. An order

will be entered.

---

performance, the third party must not only purchase without notice of the plaintiff's claim against the seller, but must also record his deed before the plaintiff records his interest"); *Kohl v. PNC Bank Nat'l Ass'n*, 912 A.2d 237, 242 n.6 (Pa. 2006).