IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONOVAN REALTY, LLC, *et al.*,**<br>**Plaintiffs/Counterclaim Defendants,**<br>**v.**<br>**CAMPERS INN HOLDING CORPORATION, *et al.*,**<br>**Defendants/Counterclaim Plaintiffs.** | **CIVIL ACTION NO. 20-3954** |

**MEMORANDUM OPINION**

**Rufe, J.** **November 16, 2026**

Before the Court are Plaintiffs' Petition for Attorneys' Fees, Expenses, and Interest and, in furtherance of the Petition, Plaintiffs' Motion to Compel Defendants to Produce Legal Invoices to the Court for *in Camera* Review. For the reasons stated below, the Petition for Attorneys' Fees, Expenses, and Interest will be granted in part, and the Motion to Compel will be denied.

## I. BACKGROUND

This case arose in the first instance from the failed sale of two recreational vehicle ("RV") dealerships. In February 2020, sellers and Plaintiffs Donovan Realty, LLC, DD&A Tilden Realty, LLC, Zerteck, Inc., Tilden Recreational Vehicles, Inc., and Derwood L. Littlefield (collectively, "BNRV") executed an Asset Purchase Agreement ("APA") with buyers and Defendants Campers Inn Holding Corporation, CI of Hamburg LLC, and CI of West Coxsackie, LLC (collectively, "Campers Inn") for the sale of the dealership businesses, as well as a Real

Estate Purchase Agreement for the dealership properties. The parties agreed that all contractual disputes are to be governed by New York law.[1]

The transaction did not close as scheduled, and BNRV later sold the properties and dealerships to non-party Camping World Holdings, Inc. and associated entities ("Camping World"). On August 13, 2020, BNRV initiated this lawsuit by bringing a breach of contract claim against Campers Inn. BNRV sought recovery of an escrowed $750,000 deposit as liquidated damages and attorneys' fees under the provisions of the APA. Campers Inn counterclaimed for breach and sought damages and specific performance. Campers Inn also pursued related litigation in this Court and in state court against Camping World.

After over three years of discovery proceedings, BNRV changed their counsel from Klehr Harrison Harvey Branzburg LLP ("Klehr Harrison") to Dilworth Paxson LLP ("Dilworth") in September 2023. Following a nine-day bench trial in December 2023, this Court held that Campers Inn materially breached the purchase agreement but did not grant BNRV liquidated damages or attorneys' fees. Both parties appealed to the Third Circuit, with Campers Inn contesting the finding of its breach and BNRV cross-appealing the denial of liquidated damages and attorneys' fees. The Third Circuit affirmed this Court's finding that Campers Inn breached the contract, reversed denial of liquidated damages and attorneys' fees to BNRV, and remanded for calculation of the fee award.[2] The escrowed deposit has been released to BNRV pursuant to an order of this Court.[3] BNRV has now filed a Petition for Attorneys' Fees, Expenses, and Interest, which Campers Inn contests.

---

[1] Doc. No. 193-1 (hereinafter cited as "APA") § 10.5.

[2] *Donovan Realty, LLC v. Campers Inn Holding Corp.*, Nos. 24-3115, 24-3152, 2026 WL 357801 (3d Cir. Feb. 9, 2026) [Doc. No. 210-1].

[3] *See* 3/4/26 Order [Doc. No. 211].

## II. LEGAL STANDARD

The Third Circuit found that BNRV is entitled to attorneys' fees under the terms of the APA.[4] Interpretation of the APA is governed by New York law pursuant to the contractual agreement of the parties.[5] "[F]or *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law."[6] The amount of a contractual fee award is also controlled by the governing state law selected by the parties.[7] The calculation of the fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous."[8] Under both New York and federal law, a district court reviewing an attorneys' fees petition uses the "lodestar" method in calculating the amount of reasonable fees.[9]

As for BNRV's Motion to Compel, the Court has the authority to "order disclosure of additional information, such as that prevailing on local rates or on the appropriateness of particular services for which compensation is sought" when reviewing a claim for attorneys'

---

[4] *Donovan Realty*, 2026 WL 357801, at *4 [Doc. No. 210-1 at 8].

[5] *See AMG Nat'l Tr. Bank v. Ries*, No. 06-cv-4337, 2007 WL 2713218, at *6 (E.D. Pa. Sep. 13, 2007) ("In contractual matters, the Pennsylvania courts generally honor the intent of contracting parties and enforce choice of law provisions executed by them so long as the transaction bears a reasonable relationship to the state whose law is governing and where the parties have sufficient contacts with the state." (citing *Berg Chilling Sys. Inc. v. Hull Corp.*, 435 F.3d 455, 463-64 (3d Cir. 2006))); Doc. No. 193-1 APA § 10.5.

[6] *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008).

[7] *See, e.g.*, *Devon Robotics, LLC v. ITOCHU Int'l, Inc.*, Nos. 09-cv-1819, 09-cv-4123, 2013 WL 5525093, at *3 (E.D. Pa. Oct. 4, 2013) (calculating a contractual attorneys' fees award under New York law where New York law governed the contract); *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 11-cv-6089, 2015 WL 6378581, at *2 (E.D. Pa. Oct. 22, 2015) (same).

[8] *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995) (internal quotation omitted).

[9] *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987) (describing the New York approach to attorneys' fees calculation); *Pa. Env't Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231-32 (3d Cir. 1998) (describing the identical federal approach).

fees.[10] It is squarely within the district court's discretion to grant or deny discovery on a fee petition dispute.[11]

## III. Discussion

### A. Motion to Compel

Given Campers Inn's opposition to BNRV's Attorneys' Fees Petition, BNRV filed a Motion to Compel seeking the production of Campers Inn's legal invoices for *in camera* review. BNRV seeks this production in order for the Court to comparatively evaluate whether its request for attorneys' fees and costs was reasonable in light of Campers Inn's legal fees and costs.

Under Federal Rule of Civil Procedure 54(d), discovery on the issue of fee petition is not routinely conducted.[12] The advisory note to the 1993 amendment of Rule 54 states that "*[o]n rare occasion*, the court may determine that discovery under rules 26-37 would be useful to the parties."[13] While evidence of another party's legal fees may be "relevant, and arguably even helpful" in some cases, the Court does not find that the facts of the instant case require additional evidence to rule on the fee petition. [14] The record here is sufficient for the Court to determine the reasonableness of BNRV's fee request.[15] The parties have fully briefed the matter and supported their submissions with declarations, exhibits, and case law. Further, given differences between the parties, introduction of Campers Inn's legal fees will not aid the Court in evaluating

---

[10] Fed. R. Civ. P. 54, advisory note to 1993 amendment.

[11] *See id.*

[12] *See* Fed. R. Civ. P. 54.

[13] Fed. R. Civ. P. 54, advisory note to 1993 amendment. (emphasis added).

[14] *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984).

[15] *See Souryavong v. Lackawanna Cnty.*, 159 F. Supp. 3d 514 (M.D. Pa. 2016), *aff'd*, 872 F.3d 122 (3d Cir. 2017) (denying a fee petitioner's request for opposition time records and invoices because, among other considerations, the record was sufficient to determine a reasonable fee award without them).

reasonableness of the fee petition of BNRV. Accordingly, the Motion to Compel will be denied and the Court will rule on BNRV's fee petition based on briefing.

**B. Petition for Attorneys' Fees, Expenses, and Interest**

In total, BNRV seeks to recover $4,221,311.96 from Campers Inn pursuant to the Third Circuit's order. This sum includes $1,521,232 in attorneys' fees for Dilworth for their representation in the present case;[16] $1,223,154.54 in attorneys' fees for Klehr Harrison for their representation in the present case prior to BNRV switching its counsel to Dilworth; $317,625.70 in other expenses associated with the representation by Dilworth and Klehr Harrison, including expert witness fees, ESI vendor services, and attorney travel costs and incidentals; $779,940.72 in attorneys' fees for Duane Morris LLP arising from BNRV's defense and indemnification of Camping World in a separate state court action brought by Campers Inn; and $379,350 in prejudgment interest on the escrowed deposit that BNRV received as liquidated damages.

Campers Inn objects to the claimed award on several grounds. First, Campers Inn asserts that $1,097,566.42 of the claimed award, encompassing the $779,940.72 to defend and indemnify Camping World and the $317,625.70 in non-attorneys'-fees expenses, falls outside the scope of the fee-shifting provision of the APA. Furthermore, Campers Inn objects that the attorneys' fees claimed for Dilworth and Klehr Harrison are unreasonable and should be denied or reduced.

The Court agrees with Campers Inn regarding the scope of the APA fee-shifting provision and will not award the $1,097,566.42 claimed by BNRV for expenses outside of the scope of the APA. The Court will also reduce the attorneys' fees sought for Dilworth and Klehr

[16] BNRV originally sought $1,525,697.25 in attorneys' fees for Dilworth, but has conceded that $4,456.25 should be deducted from that sum because of a duplicate billing entry.

Harrison as noted below. The $379,350 in prejudgment interest on the liquidated damages payment will be granted in full.

### 1. Expenses Falling Outside the Scope of the APA's Fee-Shifting Provision

After determining that the language of the APA entitled BNRV to retain the escrowed deposits as liquidated damages, the Third Circuit held that "the same contractual framework also resolves [BNRV's] claim for attorneys' fees."[17] Continuing, the Third Circuit noted that "[t]he agreements did not stop at liquidated damages but went further, allocating the costs of enforcement. The language of the parties' contracts makes clear that the prevailing party is entitled to recover attorneys' fees . . . ."[18]

Importantly, the "language of the parties' contracts" that the Third Circuit quotes in support of this conclusion is found in Section 10.9 of the APA, "Costs Associated with Disputes." Section 10.9 states in its entirety:

> If any dispute arising out of this Agreement is litigated between the Parties hereto, the prevailing Party shall be entitled to recover its reasonable attorneys' fees from the other Party in addition to any other relief to which it may be entitled.[19]

Campers Inn argues that because Section 10.9 mentions only "attorneys' fees," BNRV cannot recover other costs of the litigation under the APA.

BNRV urges the Court to look also to a separate section of the APA, Section 9.2, which addresses the deposit which Campers Inn has paid to BNRV as liquidated damages. Section 9.2 requires the party owing the deposit to:

> pay, upon the final order of a court with appropriate jurisdiction stating that such other party is entitled to a disbursement of the Deposit, all reasonable attorneys'

[17] *Donovan Realty*, 2026 WL 357801, at *4 [Doc. No. 210-1 at 8].

[18] *Id.*

[19] APA § 10.9.

> fees *and court costs* incurred by the party so entitled to the Deposit in connection with its recovery.[20]

Section 9.2 does not govern the Court's analysis. When the Third Circuit remanded this case to this court for calculation of the fee award, it did so with a mandate to adjudicate "in accordance with the opinion of [the Third Circuit]."[21] The opinion of the Third Circuit is clear that Section 10.9 of the APA is the provision which entitles BNRV to an award of attorneys' fees. Nowhere in its discussion of attorneys' fees does the Third Circuit mention or quote Section 9.2. The Third Circuit does, however, conclude in its opinion that BNRV is entitled to recover its "reasonable attorneys' fees" because it is a "prevailing party" under the framework of Section 10.9.[22] As Section 10.9 alone guided the Third Circuit's analysis, it alone guides this Court in assessing the claimed award.[23]

Focusing on the language of Section 10.9, BNRV argues that the term "attorneys' fees" does include other costs and expenses necessary to a legal representation. Indeed, when attorneys' fees are awarded by statute, the awards often do include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."[24] However, when the basis for an attorneys' fees award is contractual, New York law requires a narrower reading. To

---

[20] *Id.* § 9.2 (emphasis added).

[21] Doc. No. 210 at 2. *See also Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) ("A trial court must implement both the letter and spirit of the [appellate court] mandate, taking into account the appellate court's opinion and the circumstances it embraces.").

[22] *Donovan Realty*, 2026 WL 357801, at *4 [Doc. No. 210-1 at 9].

[23] The parties disagree on whether the "court costs" referenced in Section 9.2 include all of the costs claimed here. As Section 10.9 governs the fee award and does not include the "court costs" language, it is unnecessary for the Court to rule on the meaning of this language in Section 9.2.

[24] *U.S. Football Leage v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (affirming award of attorneys' fees and costs under the Clayton Act); *see also, e.g.*, *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (noting that "awards of attorney's fees in civil rights suits under fee-shifting statutes" normally include incidental costs); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (remanding for consideration of prevailing party's non-fee expenses in litigation brought under § 1983 and the Fair Housing Act).

promote the general policy that each party is responsible for its own attorneys' fees, contractual provisions agreeing to attorneys' fees as a form of damages "must be strictly construed to avoid inferring duties that the parties did not intend to create."[25] A court reviewing a contract which deviates from the "well-understood rule that parties are responsible for their own attorney's fees . . . should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise."[26]

In this case, it is unmistakably clear from the language of Section 10.9 of the APA that the parties agreed to deviate, at least to some extent, from the general rule that each side must pay its own attorneys' fees. However, as that contractual provision must be strictly construed, it does not follow that BNRV is entitled to recover the entirety of its litigation costs from Campers Inn. Section 10.9 states that the prevailing party in litigation between the parties to the contract "shall be entitled to recover its reasonable attorneys' fees from the other Party."[27] Construed strictly, "attorneys' fees" are distinct from costs and do not include anything but the amount billed by a party's attorneys and paralegals as compensation for their professional services.[28] To extend this definition to include other litigation costs without "unmistakably clear" language indicating the parties' intent to do so would be contrary to the required narrow reading of the APA.[29] As they are not "attorneys' fees" under Section 10.9 of the APA, BNRV will not be

---

[25] *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003).

[26] *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989).

[27] APA § 10.9.

[28] *Cf. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 303 (2006) ("[T]he term 'attorney's fees,' standing alone, is generally not understood as encompassing expert fees."); *In re Part 60 Put-Back Litig.*, 165 N.E.3d 180, 193 (N.Y. 2020) (denying a claim for attorney's fees where a contract allowed recovery for "costs and expenses" of enforcement).

[29] *See Amerisource Corp. v. Rx USA Intern. Inc.*, 2010 WL 2160017, at *14 (E.D.N.Y. May 26, 2010) (awarding attorneys' fees and routine court costs, but not expert fees, under a contractual provision mentioning "attorney fees, collection fees, and/or court costs"). BNRV's primary authority in support of their claim for costs, *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, further proves the point that contractual fee-shifting provisions must be explicit to include non-fee costs of litigation. There, the plaintiff was awarded the cost of electronic research, travel-related

awarded the claimed amounts of $244,903.30 in expert witness fees, $41,899.05 in ESI vendor services, and $30,823.35 in attorney travel costs and incidentals.

While the $799,940.72 "for being required to cover Camping World's defense costs in the litigations brought by Campers Inn" does represent, at least in part, actual attorneys' fees, it even more clearly falls outside the scope of Section 10.9 of the APA.[30] Section 10.9 is triggered "[i]f any dispute arising out of [the] Agreement *is litigated between the Parties hereto*."[31] BNRV seeks compensation for Duane Morris' representation of Camping World, who was not a party to the APA. While BNRV may have been contractually obliged to defend and indemnify Camping World, Campers Inn made no agreement to pay for that defense. "Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement *between the parties*, statute or court rule."[32] No reading of the APA intended "to avoid inferring duties that the parties did not intend to create" could support BNRV's claims for attorneys' fees accrued by Camping World.[33] Therefore, the claimed $779,940.72 for Duane Morris' attorneys' fees will also be excluded from the award.

**2. Reasonable Attorneys' Fees**

Having determined $1,097,566.42 of the claimed award is outside the scope of the APA's fee-shifting provision, the next inquiry for the Court is the reasonableness of the attorneys' fees that the APA does award. Under New York law, when contracts provide for attorneys' fees to be

---

expenses, and supplies because the contractual provision mentioned "all actual attorney fees, *actual costs, disbursements, damages, penalties and any other expense* associated with actual or threatening litigation." 549 F. Supp. 2d 274, 277, 285-88 (E.D.N.Y. 2008) (emphasis added).

[30] Pl.'s Mem. of L. in Supp. of Pet. for Att'ys' Fees, Expenses, & Interest (hereinafter cited as "Pet.") [Doc. No. 214-1] at 15.

[31] APA § 10.9 (emphasis added).

[32] *Hooper*, 548 N.E.2d at 904 (emphasis added).

[33] *Gruss & Son,* 337 F.3d at 199.

paid to the prevailing party in litigation, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."[34] Courts applying New York law use the lodestar method, under which "the hours reasonably spent by counsel, as determined by the court, [are] multiplied by the reasonable hourly rate," to calculate a presumptively reasonable fee.[35] The Court may then make adjustments based on case-specific circumstances.[36] In evaluating the request in this case, the Court considers the substantial scope and complexity of this litigation, the skill and time required to litigate it, and the successful results achieved by BNRV's counsel.[37]

*a. Reasonable Hourly Rates*

When awarding attorneys' fees to a prevailing party under New York law, the reasonable hourly rate is based on the "customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented."[38] The fee schedule provided by Community Legal Services (CLS) "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia," where the law firms that represented BNRV are located and rendered their services.[39] The Court may find hourly rates reasonable even if they exceed the CLS schedule if

---

[34] *Krear & Co.*, 810 F.2d at 1263.

[35] *Id.* (internal quotation marks removed); *see also Devon Robotics*, 2013 WL 5525093, at *3 n.8 (noting that courts applying New York law use the lodestar method for contractual, as well as statutory, attorneys' fees awards).

[36] *Devon Robotics*, 2013 WL5525093, at *3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008)).

[37] *See id.* (listing case-specific factors for courts applying New York law to consider in calculating reasonable attorneys' fees).

[38] *Id.* at *5 (quoting *Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311 (App. Div. 2004)).

[39] *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001); *see Attorney Fees*, Cmty. Legal Servs., https://clsphila.org/about-community-legal-services/attorney-fees/.

the prevailing party "establish[es] by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' that the requested hourly rates meet this standard."[40]

Here, the majority of the rates billed by the attorneys and paralegals from Dilworth and Klehr Harrison who worked on the case for BNRV fall within the CLS schedule based on the individuals' role and experience, but a number of attorneys and paralegals billed higher rates.[41] In support of these rates, BNRV submitted declarations from Jerry DeSiderato, a partner at Dilworth who worked on the case, and Douglas K. Rosenblum, General Counsel and Co-Chair of the Government Enforcement, Compliance, and White Collar Litigation Practice Group at Pietragallo Gordon Alfano Bosick & Raspanti, LLP.[42] DeSiderato's Declaration states that the rates changed by Dilworth are reasonable given the lawyers' skill and experience. Rosenblum's Declaration puts forward higher ranges of prevailing rates than those on the CLS schedule for firms such as Dilworth and Klehr Harrison litigating complex civil matters and states that all of the rates charged in this case fall comfortably within those ranges. Campers Inn presents no evidence that the rates at issue are above the prevailing rate in the community and does not contest them as unreasonable.

In light of the uncontroverted evidence presented by BNRV regarding the reasonableness of the hourly rates billed for its representation in this litigation, the Court finds that BNRV has

---

[40] *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citation omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

[41] Those that are higher include: (1) Jerry DeSiderato, Partner and Co-Chair of Dilworth's Litigation Department, who billed between $566 and $750 per hour; (2) Lawrence McMichael, Chairman of Dilworth, who billed $950 per hour; (3) Timothy Ford, Partner and Chair of Dilworth's Appellate Strategy & Advocacy Practice Group, who billed $475 per hour; (4) Matthew Gardella and Matthew Davis, Associates at Dilworth, who billed between $345 and $400 per hour; (5) Valori Henwood, Paralegal at Dilworth, who billed between $260 and $345 per hour; (6) Monica Mathis, Associate at Klehr Harrison, who billed $335 per hour; and (7) Virginia Bishop, Paralegal at Klehr Harrison, who billed $290 per hour.

[42] Doc. Nos. 214-2, 214-3.

met its burden of demonstrating that the requested rates are the prevailing rates in the community.[43]

*b. Reasonable Hours Expended*

In calculating the number of reasonable hours, the Court looks to its own familiarity and experience with the case, as well as the evidence and arguments presented by the parties.[44] The burden of proving reasonableness and producing contemporaneous records showing the dates, hours expended, and nature of work performed lies with the applicant.[45] The Court may exclude specific "excessive, redundant, or otherwise unnecessary hours" or make an across-the-board reduction in the number of hours.[46]

BNRV has submitted hundreds of pages of billing records from Klehr Harrison and Dilworth showing thousands of hours' worth of time entries by the attorneys who worked on this matter. Campers Inn makes a litany of specific objections to the work reflected in these records and argues that the Court should reduce the fee award because of excessive, redundant, and unnecessary hours billed. The Court agrees with some of Campers Inn's objections and will reduce the inputs for the lodestar calculation as noted below.

(i) Partner-Heavy Staffing, Partner Billing for Associate-Level Work, and Duplicative Staffing

As one basis for reducing the fee award, Campers Inn asserts that Dilworth partners billed a disproportionate number of hours on the case compared to associates. In total, and

[43] *See Washington*, 89 F.3d at 1035-36 (vacating a reduction of the hourly rate in an attorneys' fees award where the opponent provided no evidence to dispute affidavits from attorneys finding the rates similar to those of comparable practitioners).

[44] *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

[45] *Amerisource Corp.*, 2010 WL 2160017, at *11 (citing *N.Y. State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

[46] *Id.* (citing *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997); *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997)).

accounting for Douglas Weck's mid-litigation promotion from associate to partner, the Court finds that Dilworth partners billed 1,781.9 hours, compared to 562.2 hours for associates, making for a partner-hour to associate-hour ratio of approximately 3.2 to 1. While BNRV had every right to approve of such staffing, "the issue for this Court is whether it is reasonable to shift the resulting fees to . . . their adversary."[47]

To be sure, this is an unusually high proportion of hours billed to partners in a standard litigation.[48] But this was no standard litigation, and certainly not from Dilworth's perspective. Dilworth entered its appearance in this case on September 1, 2023—more than three years after the complaint was filed, and just three months before trial. Furthermore, the scope of the trial was broadened to include damages just days after Dilworth entered the case. Given that Dilworth's work for BNRV began while the pretrial phase was already underway and continued through trial and appeal, it is understandable that most of the work it completed was of the type generally performed by partners or other senior attorneys, such as "preparing for, taking, and defending expert depositions [and] handling the trial itself."[49] Therefore, the Court, considering its own experience and familiarity with the case, will decline to reduce the fee award on the basis that the partner-hour to associate-hour ration was *per se* unreasonable.[50]

However, Campers Inn also raises two related issues regarding Dilworth's staffing of the case with primarily partners: that BNRV was paying partners to do work that associates could have performed at a lower hourly rate, and for multiple partners to do work that one partner

---

[47] *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015).

[48] *Id.* at 51 (observing, where a "firm billed nearly 2.5 times as many partner hours as associate hours," that "such lopsidedly partner-heavy bills are quite unusual in the context of litigation work.").

[49] *Id.*

[50] This does not necessarily mean that Campers Inn must bear the cost of BNRV electing to change counsel just before trial. That argument will be addressed below. Here, the Court finds only that the partner-heavy staffing in the months leading up to trial was reasonable in this case.

could have handled.[51] These arguments have some merit. A review of Dilworth's invoices shows instances of partners performing, and billing partner-level rates for, work that could likely have been achieved by an associate billing less.

First, Dilworth seems to have engaged one partner—Erik L. Coccia—largely to perform the work typical of a senior associate. Coccia, who was a partner throughout his involvement and billed $480 per hour reflecting as much, performed work such as "legal research and analysis regarding law of the case doctrine and draft[ing] memorandum/email to J. DeSiderato regarding the same" and "finaliz[ing] first draft of bench memorandum for Judge regarding law of the case doctrine and send[ing] to J. DeSiderato for approval."[52] The Court does not doubt that Coccia performed this and other work with a high level of skill, but tasks such as legal research, internal memorandum writing, and drafts of documents to be reviewed and approved by a partner are of the type that a client could reasonably expect a cheaper associate to complete competently.[53] The same is true for deposition designations, on which Dilworth partners Jerry DeSiderato and Timothy Ford spent several hours in the months leading up to trial.[54]

That is not to say that BNRV necessarily paid for more than what they received. Dilworth was able to achieve successes for their client before this Court and on appeal, and it is quite possible that the nature and importance of the case caused BNRV to desire a partner-heavy team. But "[o]n a fee-shifting application . . . the governing test of reasonableness is objective; it is not

---

[51] *See Beastie Boys*, 112 F. Supp. 3d at 52-53 (reducing an award for those two reasons); *Fine Paper*, 751 F.2d at 593 (upholding a fee reduction based on "partner time . . . spent on tasks which should have been assigned to associates").

[52] Decl. of J. DeSiderato, Pet. Ex. 3 (hereinafter cited as "DeSiderato Decl.") [Doc. No. 214-3], Invoice No. 423692 at 12, 26.

[53] *See Fine Paper*, 751 F.2d at 591-93 (upholding fee reduction for partner hours spent on tasks such as "legal research, conference time, correspondence, and review which could readily have been performed by an associate").

[54] *See Beastie Boys*, 112 F. Supp. 3d at 52 ("[C]apable associates presumably could have . . . reviewed depositions to identify designations for the joint pretrial order.").

dictated by a particular client's subjective desires or tolerance for spending."[55] Applying an objective standard, the Court finds that it is not reasonable to shift the fees of partners performing associate-level work to Campers Inn.[56] To account for this reduction, the Court will set the hourly rate for associate-level work performed by partners at $415 per hour, the highest rate billed by a Dilworth associate in this case and the top of the standard range for attorneys with six to ten years' experience according to the CLS Fee Schedule.[57]

The Court finds, after a review of Dilworth's billing records, that Coccia spent a total of 80.6 hours on research and drafting tasks that could have been completed by an associate, all at a rate of $480 per hour, for a total of $38,688.[58] DeSiderato and Ford spent a combined 54.1 hours on deposition designations and related tasks and charged $575 and $475 per hour, respectively, for a total of $29,605.50.[59] Reducing the rate for all of these hours to $415, the combined fee for hours spent by partners on associate-level tasks is reduced from $68,293.50 to $55,900.50.

To the extent that Campers Inn's argument that Dilworth staffed the case excessively and redundantly is not addressed by this reduction, the Court finds the argument unavailing. In support of this "overstaffing" contention, Campers Inn points to weekly case team meetings attended by several senior Dilworth attorneys, as well as the staffing of the trial with four

[55] *Id.* at 52. *See also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007))).

[56] *See Beastie Boys*, 112 F. Supp. 3d at 52 (collecting examples of reductions of fee awards "where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates").

[57] *See Attorney Fees*, Cmty. Legal Servs., https://clsphila.org/about-community-legal-services/attorney-fees/.

[58] DeSiderato Decl., Invoice Nos. 422117 at 8-13, 15-17; 423692 at 1-2, 11-12, 17-18, 21-23, 25-26.

[59] DeSiderato Decl., Invoice Nos. 422117 at 15-18; 423692 at 1-2, 4, 6-9.

partners and an associate.[60] With regard to the team meetings, the Court finds it patently reasonable to have all members of a trial team attend regular trial strategy meetings. And in light of the complexity and scope of the issues addressed during the nine-day bench trial and the success achieved by Dilworth on behalf of BNRV, the Court further finds reasonable the daily trial attendance of up to five attorneys, all of whom participated actively in the trial.

(ii) <u>Counsel Transition Costs</u>

Campers Inn also contends that it should not bear the costs of BNRV's decision to switch counsel to Dilworth in 2023 after Klehr Harrison had done substantial work on the case in the preceding years. The Court agrees. When awarding attorneys' fees pursuant to a contractual provision interpreted under New York law, "fees incurred because a change in counsel requires new counsel to 'get up to speed' are not appropriately passed on to a defendant."[61] Dilworth makes no secret of the fact that its relatively late introduction to the case necessitated the devotion of time to "getting up to speed on three years' worth of litigation in order to prepare for a two-week trial."[62] While its approach in doing so was, as discussed above, largely reasonable, the Court will not place the burden of compensating BNRV's voluntary change in representation on Campers Inn.

The Court has identified a total of 86.25 hours spent by Dilworth attorneys on work that would have been unnecessary had BNRV not elected to change counsel, primarily in August and September of 2023. This includes work such as review of pleadings, orders, and opinions already

---

[60] Campers Inn's first response contends that five Dilworth partners attended trial, Defs.' Resp. to Pet. for Att'ys' Fees [Doc. No. 222] at 15, but it now acknowledges that Douglas Weck was an associate at the time, Defs.' Sur-Reply Mem. in Opp'n to Pet. [Doc. No. 232] at 3-4.

[61] *U.S. Bank Nat'l Assoc. v. Dexia Real Est. Cap. Mkts.*, No. 12-cv-9412, 2016 WL 6996176, at *9 (S.D.N.Y. Nov. 30, 2016), *aff'd sub nom. U.S. Bank Nat'l Assoc. v. Dexia Holdings, Inc.*, 706 F. App'x 23 (2d Cir. 2017); *see also Malarkey v. Texaco, Inc.*, 794 F. Supp. 1237, 1247-48 (S.D.N.Y. 1992) (explaining why the substituted-in firm should bear the burden of duplicative work resulting from a voluntary change in counsel).

[62] DeSiderato Decl. ¶ 9.

on the docket, internal communications to introduce other attorneys to the case, and communications with Klehr Harrison about the case and the logistics of the transition.[63] This type of work, for this purpose, "while reasonably commissioned, is not reasonably passed along to the adversary."[64] Therefore, those hours will be stricken from the lodestar calculation and the fee award will be reduced by the $52,556.50 that they produced in legal fees.

(iii) Unnecessary Affirmative Damages Expert Work

Campers Inn argues that, because BNRV was awarded liquidated damages under the APA, the time BNRV's attorneys spent supervising, reviewing, and coordinating the work of its damages expert witness, Megan Salehli, was unnecessary.[65] BNRV, through its attorneys, engaged Salehli for two distinct purposes: to affirmatively show BNRV's actual damages, and to rebut the testimony of Campers Inn's expert witnesses as to Campers Inn's actual damages.[66] These two roles will be evaluated separately for purposes of determining the necessity of the hours spent developing Salehli's testimony.

The purpose of Salehli's affirmative damages work came into dispute during the trial itself when BNRV filed a motion in limine seeking the exclusion of any evidence, testimony, or opinions concerning future lost profits.[67] In response, Campers Inn pointed out that Salehli's

---

[63] DeSiderato Decl., Invoice Nos. 419906 at 1-2; 420743 at 1-3, 4-6, 8, 422117 at 1, 3-4, 6. The Court's tally does not include, as Campers Inn would have it, review of the transcripts of depositions taken by Klehr Harrison during the pre-trial phase at which Dilworth entered the case. This work, rather than a duplicative transition cost, is a normal step of pretrial litigation practice and would more than likely have been performed by Klehr Harrison attorneys had they remained counsel for BNRV through trial. As Klehr Harrison had not begun in earnest its trial preparation at the time of the switch, this work by Dilworth was not redundant. S*ee* DeSiderato Decl., Invoice No. 493988 (showing the activity of Klehr Harrison in its final month as counsel for BNRV).

[64] *U.S. Bank Nat'l Assoc.*, 2016 WL 6996176, at *9.

[65] Salehli's expert fees have already been excluded from the award as non-compensable under the APA. This section addresses the fees billed by Klehr Harrison and Dilworth attorneys in supervising her work.

[66] As liability and damages were tried together, both sides sought damages at trial on the assumption that the opposition would be found liable.

[67] *See* Doc. No. 140.

report itself estimated BNRV's lost profits.[68] To this, BNRV retorted that the purpose of Salehli's lost profits report was not to seek those lost profits as actual damages, but to support the validity of the liquidated damages clause of the APA—in other words, to show that the liquidated damages clause was not so disproportionate to actual losses as to be an unenforceable penalty.[69] In the final chapter of this saga, Campers Inn noted during trial that it had never argued that the liquidated damages clause was an unenforceable penalty, and the parties agreed that BNRV therefore would not need to call Salehli as an affirmative expert witness.[70]

The Court finds that Salehli's affirmative damages work was unnecessary from the start, and considers the Third Circuit's opinion instructive in that regard. The Third Circuit held that, "[o]utside [the] narrow penalty context, proof of actual damages is unnecessary, because the parties' agreement fixes the remedy."[71] And in this case, "Campers Inn expressly disclaimed the only defense that could make actual damages relevant," that is, that the liquidated damages clause was a penalty.[72] Importantly, Campers Inn did not abandon this defense at the eleventh hour during trial; it never raised a penalty defense at any point in the litigation.[73] Indeed, the invalidity of a liquidated damages provision is an affirmative defense that Campers Inn had to raise in its answer to the complaint under Federal Rule of Civil Procedure 8, and could not have

[68] *See* Doc. No. 153.

[69] *See* Doc. No. 158; *Ryan v. Orris*, 463 N.Y.S.2d 883, 885-86 (App. Div. 1983) ("[L]iquidation clauses are enforceable when the stipulated sum is not so grossly disproportionate to the probable anticipated loss as to actually be a penalty designed to induce performance . . . . [Proof of actual damages] was properly received as bearing on the reasonableness of the amount of the liquidated damages.").

[70] Trial Tr. Dec. 5, 2023 [Doc. No. 174] at 3-5.

[71] *Donovan*, 2026 WL 357801, at *3 [Doc. No. 210-1 at 7].

[72] *Id.*

[73] *See* Trial Tr. Dec. 5, 2023 [Doc. No. 174] at 4 (statement of James Smith, Esq.) ("We never mentioned penalty, ever—in a pleading, in a conversation, in a deposition. It didn't come up.").

raised for the first time at trial without prejudicing BNRV.[74] Since BNRV should have known from the time of Campers Inn's answer that Campers Inn was not raising "the only defense that could make actual damages relevant," Salehli's affirmative work on actual damages was unnecessary.

Salehli's role as a rebuttal witness to Campers Inn's evidence of its own lost profits, to which she did testify at trial, is a different matter.[75] The Court is unconvinced by Campers Inn's claim that the time spent by BNRV's attorneys on preparing Salehli's response to Campers Inn's own damages evidence was unnecessary. True, the issue of Campers Inn's damages was eventually mooted by BNRV's successful defense to Campers Inn's claim for breach, but unlike the penalty defense, Campers Inn fully pursued their claim for damages throughout trial. Allowing Campers Inn to pursue a claim, fail, and then avoid paying attorneys' fees for BNRV's defense to the claim by deeming it "unnecessary" would be wholly contrary to the purpose of the fee-shifting agreement of the APA.[76]

It is therefore left to the Court to remove the attorney hours spent on Salehli's affirmative damages report and potential testimony from the fee award while leaving in place the hours spent on the rebuttal report and testimony. Given the nature of the billing records, which often do not specify which of Salehli's reports the time relates to, it is virtually impossible to

---

[74] *See NewCSI, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 259-60 (5th Cir. 2017) (holding that a party forfeited a challenge to the validity of a liquidated damages clause because it failed to raise the issue as an affirmative defense in its responsive pleading and only raised it at a time that prevented the opposition from developing facts that could have aided in contesting the defense); *Jeddo Coal Co. v. Rio Tinto Procurement (Sing.) PTD Ltd.*, No. 16-cv-621, 2018 WL 6322908, at *4 (M.D. Pa. Dec. 4, 2018) (referring to a challenge to the enforceability of a liquidated damages clause as an "affirmative defense").

[75] Camper's Inn chose to pursue actual damages on the theory that the APA did not limit damages for breach to the liquidated damages provision.

[76] *See, e.g.*, *Chaiani v. Lucchino*, 942 N.Y.S.2d 735, 737 (App. Div. 2012) (awarding contractual attorneys' fees to a successful defendant as the prevailing party).

perform this task precisely.[77] The Court has identified roughly 11.6 hours which clearly relate to the affirmative report and will be removed (9.4 from Klehr Harrison and 2.2 from Dilworth), 93 hours which clearly relate to the rebuttal report and will be included (17.3 from Klehr Harrison and 75.7 from Dilworth), and 132.2 hours which do not clearly relate to either report specifically (46.3 from Klehr Harrison and 85.9 from Dilworth).[78] Without the ability to say for certain what proportion of these ambiguous hours were dedicated to the affirmative report as opposed to the rebuttal report, they will be reduced by 50%, which represents the Court's best estimate based on its familiarity with the case. The result is a reduction of $45,219.86 from the final attorneys' fees award claimed ($13,052.39 from Klehr Harrison and $32,167.46 from Dilworth).

(iv) Block Billing

Campers Inn claims that BNRV's billing records—particularly the Klehr Harrison invoices—include many examples of "block billing," in which multiple tasks are grouped in a single time entry by an attorney. While not per se unreasonable,[79] "as a general rule, block billing is disfavored."[80] It "impedes the client's ability to understand the precise time allocable to the tasks for which it is being billed . . . [and] it impedes a court's ability to assess whether the time expended on any given task was reasonable."[81] Block billing's negative effect on the

[77] *See, e.g.*, DeSiderato Decl. Invoice No. 491983 at 1 ("Correspondence with expert re: status"). The Court does not fault the attorneys who entered these records for their ambiguity, as it doubts they could have reasonably foreseen the dichotomy that this vigorous dispute over fees has produced. Further complicating the Court's task is the prevalence of block billing in the billing records, discussed and penalized below. The figures in this section are estimates but reflect the Court's best effort at parsing the billing records line-by-line.

[78] DeSiderato Decl., Invoice Nos. 459460 at 2-3; 461341 at 3, 5; 463126 at 2-4, 8; 464929 at 1-5; 466882 at 1-7; 468720 at 1-5; 470498 at 1, 3, 5, 7; 478989 at 1-2; 482149 at 1; 491983 at 1; 493583 at 2-3 (Klehr Harrison); 420743 at 2-7, 10-11; 422117 at 1-14, 17-19; 423692 at 2-3, 5, 7-13, 15-16, 18-19, 21, 23-24, 26; 425075 at 1, 3-8 (Dilworth).

[79] *546-552 W. 146th St. LLC v. Arfa*, 950 N.Y.S.2d 24, 28 (App. Div. 2012).

[80] *Beastie Boys*, 112 F. Supp. 3d at 53.

[81] *Id.*

Court's ability to evaluate the reasonableness of claimed fees is greatest when large amounts of time are block billed and the entries do not "contain enough detail and specificity so as to afford reasonable confidence that the time billed was productively spent."[82] On the other end of the spectrum, "temporally short entries combining related tasks" that are not unreasonably vague or general do not prevent the Court from making a judgment about the reasonableness of the hours claimed.[83]

The Court finds that block billing is indeed pervasive among the Dilworth and, particularly, Klehr Harrison's invoices, including many entries which cross the threshold from "temporally short entries combining related tasks" to an unreasonable combination that prevents the Court from assessing whether the billed time was reasonable. The following examples are illustrative but far from exhaustive:

| **Date** | **Attorney** | **Time** | **Description** |
|---|---|---|---|
| 11/11/20 | Willan (Klehr Harrison) | 12.5 | Draft opposition to motion to amend / finalize and send letter responding to Haig Partners / review letter from counsel for Campers Inn re: inadvertently produced documents, draft response, conversations with J[onathan] Krause re: same |
| 2/2/22 | Hill (Klehr Harrison) | 9.1 | Confer with M. Salehli re: information need for her expert report/ confer with L. Bollinger and G. Hoffman [redacted] / telephone call P. Willan re: same, re: our potential supplemental production, re: our discovery deficiency letter to Campers inn, re: Campers World issues and re: summary-judgment issues / confer with S. Grey re: documents needed for our expert report / review documents relevant to our expert report / review all Campers Inn transaction documents / review all Camping World transaction documents / add to case memo re: damages issues / prepare for call with S. Poles / review D. Littlefield's depositions re: same / add to case memo re: same / exchange emails with S. Poles / review our last discovery deficiency letter to Campers Inn / begin review |

[82] *Id.*

[83] *Abdell v. City of New York*, No. 05-CV-8453, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015).

| | | | |
|---|---|---|---|
| | | | of Campers Inn's last production re: same / annotate our deficiency letter in preparation for a meet and confer with Campers Inn / confer with S. Grey re: common-interest research under NY law |
| 12/1/23 | Loscalzo (Dilworth) | 7.6 | Review designations for exhibit identification; review CI surreply and email comm re same; review draft letter to court and comments; review/comment on MS direct outline; revisions to Dovell outline after comments from MS |

These entries are a small sample of numerous instances where what is ostensibly an entire day's worth of work on the case was smashed into one narrative, depriving the Court of the ability to assess whether the time spent on each individual activity was reasonable. On the other hand, these and the other similar entries do "clearly enumerate the work completed in the designated amounts of time."[84] Given that the contested entries are generally clear and specific as to the work performed yet group together unrelated tasks over large time periods, the Court will make a minor reduction to the attorneys' fees award.[85] Considering the relative prevalence of block billing between the two firms' records, Klehr Harrison's award will be reduced by 10% and Dilworth's by 5%.

(v) Other Objections to the Fee Award

Campers Inn makes two other arguments that do not warrant the same depth of analysis as the issues discussed above. First, it points to an entry that was entered twice in Dilworth's records—which Dilworth admits was an error and does not seek recovery for—and urges the Court to question the rigor with which the remaining entries were reviewed and to scrutinize

[84] *Beastie Boys*, 112 F. Supp. 3d at 54.

[85] *See Bobrow Palumbo*, 549 F. Supp. 2d at 283-84 (reducing attorneys' fees award by ten percent for block billing and vague entries and citing examples of across-the-board percentage cuts for block billing). The reduction will be from the amount of the fee award *after* the specific deductions noted above, so as not to double-punish BNRV by reducing the sum based on hours that are already stricken.

them heavily. The Court has indeed scrutinized the billing records and finds no other errors warranting reduction.

Campers Inn also seeks a reduction of the award on the basis that BNRV used artificial intelligence ("AI") to summarize the Klehr Harrison billing records instead of reviewing them thoroughly for reasonableness as is required. This misstates the record. BNRV did provide the Court with an AI-generated "approximation of the hours expended by Klehr Harrison, by activity."[86] But there is no indication that this AI-generated summary stood in for manual review of the billing records. Indeed, the summary appears in the same paragraph of DeSiderato's Declaration in which he mentions "Dilworth's manual review of the Klehr invoices," and only three paragraphs down from a description of the review.[87] The Court sees no reason to reduce the fee award based on the use of AI to generate the summary, as it was utilized to supplement, rather than replace, manual review.

**3. Prejudgment Interest**

Finally, BNRV seeks $379,350 in prejudgment interest to account for its lost use of the escrowed $750,000 deposit in the time between Campers Inn's breach of the APA on July 31, 2020, and the disbursement of the deposit to BNRV on March 12, 2026. Campers Inn does not contest this portion of the award, and the law supports BNRV's claim.

Unless the parties to a contract governed by New York law clearly waive the provisions of N.Y. C.P.L.R. 5001, statutory prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract."[88] In a diversity case involving a contract governed by New York law, the rate of prejudgment interest is a substantive issue and is thus

[86] DeSiderato Decl. ¶ 7.

[87] *Id.* ¶¶ 4, 7.

[88] N.Y. C.P.L.R. 5001(a); *IHG Harlem I LLC v. 406 Manhattan LLC*, 203 N.Y.S.3d 543, 551 (App. Div. 2024).

supplied by New York statutory law.[89] New York law supplies a simple interest rate of nine percent,[90] accruing from the time of the breach until the awarded sum is returned to the non-breaching party.[91]

The parties here have not clearly waived the provisions of C.P.L.R. 5001, so BNRV is entitled to prejudgment interest on the $750,000 deposit awarded as liquidated damages.[92] The nine percent prejudgment interest on the $750,000 award accrued from July 31, 2020—the date of Campers Inn's breach—until March 12, 2026—the date that the $750,000 was disbursed to BNRV. Interest on the deposit accrued in the amount of $67,500 per year for 5.62 years, resulting in a total sum of $379,350 which will be awarded to BNRV.

## IV. CONCLUSION

For the reasons stated above, BNRV's Motion to Compel will be denied and BNRV will be awarded attorneys' fees in the amount of $2,442,009.77 and prejudgment interest in the amount of $379,350.00. For the sake of clarity, a summary of the reductions to the claimed fees and costs award is produced below.

| Description | Amount Sought | Reduction(s) | Amount Awarded |
|---|---|---|---|
| Expert witness fees | $244,903.30 | - $244,903.30 as outside the scope of the APA | $0 |
| ESI vendor services | $41,899.05 | - $41,899.05 as outside the scope of the APA | $0 |

[89] *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 173 (3d Cir. 2010).

[90] N.Y. C.P.L.R. 5004(a).

[91] N.Y. C.P.L.R. 5001(b); *IHG Harlem I*, 203 N.Y.S.3d at 550.

[92] *See IHG Harlem I*, 203 N.Y.S.3d at 550 (holding that, even where parties "elect[ed] a sole remedy and defin[ed] liquidated damages in the event of [a] breach," they did not clearly waive the C.P.L.R. 5001(a) statutory interest because the contract "did not provide for another form of compensation for loss of the use of the purchaser's money nor expressly limit defendants' liability in the event of their default").

| | | | |
|---|---|---|---|
| Attorney travel costs and incidentals | $30,823.35 | - $30,823.35 as outside the scope of the APA | $0 |
| Attorneys' fees for Duane Morris' representation of Camping World | $779,940.72 | - $779,940.72 as outside the scope of the APA | $0 |
| Attorneys' fees for Klehr Harrison's representation of BNRV | $1,223,154.54 | - $13,052.39 for unnecessary affirmative damages expert work<br><br>- $121,010.22 (10%) for block billing | $1,089,091.93 |
| Attorneys' fees for Dilworth's representation of BNRV | $1,525,697.25 | - $4,456.25 for double billing error<br><br>- $12,393.00 for partner billing for associate work<br><br>- $52,556.50 for counsel transition costs<br><br>- $32,167.46 for unnecessary affirmative damages expert work<br><br>- $71,206.20 (5%) for block billing | $1,352,917.84 |
| **Total** | $3,846,418.21 | - $1,404,408.44 | $2,442,009.77 |

An order will be entered.